UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET
METAL AND AIR CONDITIONING INDUSTRY,
and NATIONAL STABILIZATION AGREEMENT
OF THE SHEET METAL INDUSTRY FUND,

<span style="color:red">**FILED**
**CLERK**</span>

5/28/2015 4:11 pm

<span style="color:red">**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**</span>

                                        Plaintiffs,

                                                          **ORDER**
        -against-                                         09-CV-0121 (SJF)(ARL)


COVEREX CORPORATE RISK SOLUTIONS and
MATTHEW AMODEO,

                                        Defendants.
-----------------------------------------------------------------X
FEUERSTEIN, District Judge:

I.      BACKGROUND

        On January 13, 2009, plaintiffs Sheet Metal Workers' National Pension Fund ("NPF"),

National Energy Management Institute Committee for the Sheet Metal and Air Conditioning

Industry ("NEMI"), Sheet Metal Occupational Health Institute Trust ("SMOHI"), International

Training Institute for the Sheet Metal and Air Conditioning Industry ("ITI") and National

Stabilization Agreement of the Sheet Metal Industry Fund ("SASMI") (collectively, "plaintiffs"

or "the Funds"), all employee benefit plans within the meaning of § 3(3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3), commenced this action against

Rolf's Metal Tops Inc. ("RMTI") and Joseph C. Iorio ("Iorio"), *inter alia*, pursuant to Section

502 of ERISA, 29 U.S.C. § 1132, seeking, *inter alia*, to enforce the obligations of RMTI to make contributions to the Funds; to reclaim property of the Funds converted by RMTI and Iorio; and to remedy RMTI's and Iorio's breaches of fiduciary obligations and commission of prohibited transactions.

On March 6, 2009, plaintiffs filed a First Amended Complaint, *inter alia*, adding defendants Coverex Corporate Risk Solutions ("Coverex") and Matthew Amodeo ("Amodeo") (collectively, "defendants") as additional defendants to this action and seeking damages to reclaim property of the Funds converted by defendants and to remedy their breaches of fiduciary obligations and commission of prohibited transactions in the sum of sixty-seven thousand seven hundred twenty-nine dollars and fifty-eight cents ($67,729.58), together with interest thereon, liquidated damages and reasonable attorneys' fees and costs. Issue was joined by the filing of an answer to the amended complaint on behalf of defendants on April 29, 2009.

By order dated August 24, 2009, the Honorable Arlene R. Lindsay, United States Magistrate Judge, *inter alia*, stayed this case pursuant to 11 U.S.C. § 362(a) due to RMTI's filing of a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on August 16, 2009. By order dated November 17, 2009, upon the joint application of plaintiffs and defendants, Magistrate Judge Lindsay lifted the stay with respect to plaintiffs' claims against Iorio.

On October 27, 2010, October 28, 2010 and November 9, 2010, Iorio filed letters, *inter alia*, requesting that this action be stayed pursuant to 11 U.S.C. § 362(a) because he had filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on October 20, 2010.

However, on June 14, 2011, plaintiffs filed a motion to sever their claims against RMTI and Iorio so that they could proceed with their claims against defendants in this action. During a hearing on the motion held on June 24, 2011, the Honorable Thomas C. Platt, Senior United States District Judge, to whom this case was originally assigned, orally granted plaintiffs' motion to sever.[1]

On October 28, 2012, plaintiffs moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment on their claims against Amodeo. By Memorandum and Order dated April 22, 2013 ("the April Order"), *inter alia*, Judge Platt granted summary judgment in favor of plaintiffs on the issue of Amodeo's liability for breach of a fiduciary duty and conversion, finding, *inter alia*, that Amodeo was the Chief Financial Officer ("CFO") of RMTI, (April Order at 3); "was a fiduciary within the scope of ERISA and [] exercised discretion and authority over the contributions belonging to the [] [F]unds," (id. at 12); and "breached his fiduciary duty with respect to plaintiffs' funds and converted the contributions which rightfully belonged to plaintiffs," (id. at 1). In the April Order, Judge Platt indicated that "[t]he exact sum of damages and whether plaintiffs are entitled to attorneys' fees and costs shall be determined at trial in this matter." (Id. at 13).

On September 18, 2013, Amodeo moved pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure to vacate and set aside the April Order on the ground that newly discovered evidence demonstrated that he was not a fiduciary under ERISA. By order dated June 26, 2014

---

[1] Although on July 6, 2011, plaintiffs filed a proposed order, *inter alia*, granting their motion to sever, (DE 53), Judge Platt never signed or entered that order. On July 9, 2014, following the reassignment of this case to me, I issued an order (1) severing plaintiffs' claims against RMTI and Iorio, and dropping them from this case, pursuant to Rule 21 of the Federal Rules of Civil Procedure; and (2) vacating the stay of this action. (DE 75).

("the June Order"), Judge Platt denied Amodeo's motion on the grounds, (1) that all of the newly discovered documents existed as of the date of the April Order; and (2) that Amodeo failed to demonstrate "that he was excusably ignorant of the facts that existed at the time the [April] Order was issued despite exercising due diligence[.]" (June Order at 6).

On July 8, 2014, this case was reassigned to me. By order dated July 9, 2014 ("the July Order"), I, *inter alia*, (1) granted plaintiffs' application for leave to serve a motion for summary judgment, in lieu of a trial, on the issue of damages; and (2) directed plaintiffs to file a status report regarding the status of their claims against Coverex on or before August 11, 2014, or their claims against Coverex in this action would be deemed voluntarily dismissed. Although plaintiffs filed a status report on July 18, 2014, they did not specifically address the status of their claims against Coverex in this action. Accordingly, and since plaintiffs have taken no steps to prosecute their claims against Coverex in this action for the approximate six (6) years that it has been pending, plaintiffs' claims against Coverex are dismissed in their entirety with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and to comply with an order of this Court.

Pending before the Court is plaintiffs' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on the issue of damages against Amodeo. For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

II.    DISCUSSION

A.    Standard of Review

"A motion for summary judgment may properly be granted * * * only where there is no

4

genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009); see Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added) (internal quotations and citation omitted)); Vermont Right to Life Comm., Inc. v. Sorrell, 758 F.3d 118, 142 (2d Cir. 2014), cert. denied, 135 S. Ct. 949, 190 L. Ed. 2d 830 (2015) ("The role of the court on a summary judgment motion is to determine whether, as to any material issue, a genuine factual dispute exists." (quotations and citation omitted)).  "On a motion for summary judgment, a fact is material if it 'might affect the outcome of the suit under the governing law.'" Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York, 746 F.3d 538, 544 (2d Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the nonmoving party," Dalberth v. Xerox Corp., 766 F.3d 172, 182 (2d Cir. 2014) (quotations and citation omitted), and "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom

summary judgment is sought." <u>Smith v. County of Suffolk</u>, 776 F.3d 114, 121 (2d Cir. 2015) (quotations and citation omitted); <u>accord</u> <u>Delaney v. Bank of America Corp.</u>, 766 F.3d 163, 168 (2d Cir. 2014). "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Dalberth</u>, 766 F.3d at 182 (quoting <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. 2505); <u>see also</u> <u>Delaney</u>, 766 F.3d at 168. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Ricci</u>, 557 U.S. 557, 129 S. Ct. at 2677 (quoting <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); <u>accord</u> <u>Smith</u>, 776 F.3d at 121.

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." <u>CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP</u>, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted); <u>see also</u> <u>Crawford v. Franklin Credit Mgmt. Corp.</u>, 758 F.3d 473, 486 (2d Cir. 2014). "[W]hen the moving party has carried its burden * * *, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts * * *[,]" <u>Scott v. Harris</u>, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (quoting <u>Matsushita Elec.</u>, 475 U.S. at 586-87, 106 S. Ct. 1348), and must offer "some hard evidence showing that its version of the events is not wholly fanciful." <u>Miner v. Clinton County, New York</u>, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." <u>Lyons v. Lancer Ins. Co.</u>, 681 F.3d 50, 56 (2d Cir. 2012). "'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" <u>Fabrikant v. French</u>, 691 F.3d 193,

205 (2d Cir. 2012) (quoting <u>Anderson</u>, 477 U.S. at 252, 106 S. Ct. 2505); and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." <u>DiStiso v. Cook</u>, 691 F.3d 226, 230 (2d Cir. 2012); <u>see also</u> <u>Fabrikant</u>, 691 F.3d at 205 ("[C]onclusory statements or mere allegations will not suffice to defeat a summary judgment motion." (quotations and citation omitted)).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record * * *; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Rule 56(e) provides, in relevant part, that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: * * * (2) consider the fact undisputed for purposes of the motion; [or] (3) grant summary judgment if the motion and supporting materials– including the facts considered undisputed– show that the movant is entitled to it; * * *."  Fed. R. Civ. P. 56(e).

Moreover, Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 56.1") "requires that any motion for summary judgment be accompanied by a list of the 'material facts as to which the moving party contends there is no genuine issue to be tried.'" <u>T.Y. v. New York City Dep't of Educ.</u>, 584 F.3d 412, 417 (2d Cir. 2009) (quoting Local Civil Rule 56.1(a)); <u>see also</u> <u>Giannullo v. City of New York</u>, 322 F.3d 139, 140 (2d Cir. 2003) (holding that Local Civil Rule 56.1 "requires a party moving for summary judgment to submit a statement of the allegedly undisputed facts on

which the moving party relies, together with citation to the admissible evidence of record supporting each such fact.")  "Should the nonmoving party wish to contest the assertions contained within a Rule 56.1 statement, the nonmoving party must respond to each of the statement's paragraphs and include, if necessary, a statement of the additional material facts that demonstrate a genuine issue for trial."  T.Y., 584 F.3d at 417-18; see Local Civil Rule 56.1(b) ("The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.");  Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir.2001) ("A party opposing summary judgment must respond with a statement of facts as to which a triable issue remains.")  "A nonmoving party's failure to respond to a Rule 56. 1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."  T.Y., 584 F.3d at 418; see Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.");  Giannullo, 322 F.3d at 140 ("If the opposing party * * * fails to controvert a fact so set forth in the moving party's Rule 56. 1 statement, that fact will be deemed admitted.");  Holtz, 258 F.3d at 72 ("The facts set forth in a moving party's [56.1] statement will be deemed to be admitted unless controverted by the opposing party's statement." (quotations and citation omitted)).  Nonetheless, Local Civil Rule 56.1 "does not absolve the party seeking summary judgment of the burden of showing that it is

entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." <u>Giannullo</u>, 322 F.3d at 140 (quoting <u>Holtz</u>, 258 F.3d at 74).

Moreover, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." <u>Holtz</u>, 258 F.3d at 73. "[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." <u>Id.</u> (quotations and citations omitted).

B.     Damages Claims

Section 1132(g)(2) of Title 29 of the United States Code provides:

> "In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of--(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."

29 U.S.C. § 1132(g)(2). As Judge Platt already determined that Amodeo is liable to the Funds as a fiduciary under ERISA, plaintiffs are entitled to recover from him an amount equal to the unpaid contributions, interest thereon, liquidated damages, attorney's fees and costs pursuant to that statute.

1.    Delinquent Contributions, Interest and Liquidated Damages

Plaintiffs allege that Amodeo is liable as a fiduciary under ERISA for the following

damages incurred during the time period from July 1, 2008 through October 31, 2008 as follows:

> (a)    to NPF for (a) contributions in the amount of fifty-six thousand four
> hundred one dollars and forty-three cents ($56,401.43); (b) interest thereon
> in the amount of thirty-six thousand one hundred seventy-three dollars and
> seventy-four cents ($36,173.74); and (c) liquidated damages in the amount of
> eleven thousand two hundred eighty dollars and twenty-six cents
> ($11,280.26);

> (b)    to NEMI for (a) contributions in the amount of two hundred eleven dollars
> and sixty-two cents ($211.62); (b) interest thereon in the amount of one
> hundred thirty-five dollars and sixty-seven cents ($135.67); and (c)
> liquidated damages in the amount of forty-two dollars and twenty-six cents
> ($42.26);

> (c)    to SMOHI for (a) contributions in the amount of one hundred forty-one
> dollars and ten cents ($141.10); (b) interest thereon in the amount of
> ninety dollars and forty-four cents ($90.44); and (c) liquidated damages in
> the amount of twenty-eight dollars and eighteen cents ($28.18);

> (d)    to ITI for (a) contributions in the amount of eight hundred forty-six dollars
> and sixty cents ($846.60); (b) interest thereon in the amount of five
> hundred forty-two dollars and seventy-two cents ($542.72); and (c)
> liquidated damages in the amount of one hundred sixty-nine dollars and
> twenty-eight cents ($169.28); and

> (e)    to SASMI for (a) contributions in the amount of ten thousand one hundred
> twenty-eight dollars and eighty-three cents ($10,128.83); (b) interest
> thereon in the amount of six thousand five hundred twenty-five dollars and
> eighty-one cents ($6,525.81); and (c) liquidated damages in the amount of
> two thousand twenty-five dollars and seventy-five cents ($2,025.75).

(Plf. 56.1 Stat., ¶ 5)[2].

---

[2]  The underlying collective bargaining agreement ("CBA") adopted the Agreements and
Declarations of Trust of the Funds, (Declaration of William Shaw in Support of Plaintiffs'
Damages ["Shaw Decl."], ¶ 33), which all provide, in essence, that in addition to being obligated
to pay the delinquent contributions, an employer is obligated to pay, *inter alia*, interest on the
delinquent contributions at the rates stated therein, costs, attorney's fees and liquidated damages

Defendants contend, *inter alia*, (1) that plaintiffs' Schedules of Past Contributions contain "complete and obvious overcharge[s]," (Affirmation of Dustin A. Levine, Esq. ["Levine Aff."], ¶ 21), insofar as they calculate damages through November 2008, yet Amodeo's association with RMTI and Iorio had terminated on September 20, 2008, (see id., ¶ 20); (2) that the other exhibits submitted by plaintiffs in support of their claims for unpaid contributions, interest thereon and liquidated damages are "severely incorrect" and "totally untrue" because they are based upon the inaccurate Schedules of Past Contributions, (id., ¶¶ 22-23), or are "missing substantial information," (id., ¶ 22); and (3) that plaintiffs failed to demonstrate their entitlement to judgment as a matter of law for the amount of unpaid contributions claimed because they "failed to state or list the certain hours or the number of participants" employed by RMTI upon which the amount of contributions due is ascertained under the CBA, (see id., ¶ 24).

Defendants fail to demonstrate the existence of a genuine dispute of a material fact with respect to the issue of damages for which Amodeo is liable, insofar as they have not cited to particular materials raising a genuine dispute, nor shown that plaintiffs' submissions "do not establish the absence * * * of a genuine dispute, or that [plaintiffs] cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1). Moreover, since Amodeo did not submit a statement of facts pursuant to Local Civil Rule 56.1(b) with his opposition, I deem the facts asserted in plaintiffs' 56.1 Statement, which are supported by the admissible evidence of record, to be "uncontested and admissible." T.Y., 584 F.3d at 418. Accordingly, the only issue on this

---

in an amount equal to "the greater of 20% of the delinquent Contributions or interest on the delinquent Contributions at the * * * stated rate of interest." (Shaw Decl., Ex. G at 19 [NPF]; see also id., Exs. H at 14-15 [SASMI] , I at Art. 7, Sec. 8 [ITI], J at 21-22 [SMOHI], and K at 22-23 [NEMI]).

motion is whether plaintiffs' established their entitlement to judgment as a matter of law on their claim for damages against Amodeo. For the reasons set forth below, plaintiffs have established their entitlement to judgment as a matter of law on their claims for unpaid contributions, interest thereon and liquidated damages against Amodeo with respect to the period from July 1, 2008 through August 31, 2008, but not for the period from September 1, 2008 through October 31, 2008.

Pursuant to Section 409(b) of ERISA, "[n]o fiduciary shall be liable with respect to a breach of fiduciary duty * * * if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b); see also Coriale v. Xerox Corp., 775 F. Supp. 2d 583, 600 (W.D.N.Y. 2011), aff'd, 490 F. App'x 387 (2d Cir. Aug. 3, 2012) (holding that generally, "a fiduciary is not liable for a breach committed before he became a fiduciary or after he ceases to be a fiduciary." (quotations, ellipsis and citations omitted)). Nonetheless, liability may be imposed if, before he ceased being a fiduciary, the fiduciary "set in motion the forces which caused the actual damage of which the plaintiffs complain." Burke v. Bodewes, 250 F. Supp. 2d 262, 269 (W.D.N.Y. 2003) (quotations and citation omitted); accord District 65, UAW v. Harper & Row, Publishers, Inc., 576 F. Supp. 1468, 1483-84 (S.D.N.Y. 1983).

Although Judge Platt did not indicate the specific period for which Amodeo was a fiduciary under ERISA in the April Order, it is clear from the exhibits attached to the prior motions for summary judgment on the issue of liability, and from Amodeo's opposition to the instant motion, (see Levine Aff., ¶ 20), that Amodeo was a fiduciary within the meaning of ERISA from at least July 1, 2008 to September 20, 2008. The amount of unpaid contributions, interest thereon and liquidated damages sought for the period from July 1, 2008 through August

31, 2008 is supported by the business records submitted by the Funds, which are admissible

pursuant to the declaration of Walter Shaw, the Billing and Eligibility Department Manager and

the Collective Bargaining Agreement Department Manager of the Funds, (Shaw Decl., ¶ 1); <u>see</u>

<u>Major League Baseball Props., Inc. v. Salvino, Inc.</u>, 542 F.3d 290, 312 (2d Cir. 2008) (holding

that "[c]ontemporaneous business records made 'by, or from information transmitted by, a person

with knowledge,' and 'kept in the course of a regularly conducted business activity' by a business

whose 'regular practice' it was to make and keep such records, Fed. R. Evid. 803(6)[[3]], are

admissible as an exception to the hearsay rule * * *[,]" and that "[t]he foundation for the

admission of * * * [such] business records [may be] laid [by] [a] sworn declaration[] * * *"), and

defendants have not established that the source of information contained in those business

---

[3]  Rule 803(6) of the Federal Rules of Evidence provides, in relevant part, that "[a] record of an act, event, [or] condition" is not excluded by the rule against hearsay "if: (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business * * *; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) * * * or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

Rule 902(11) of the Federal Rules of Evidence provides, in pertinent part, that "[t]he original or a copy of a domestic record that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court" is "self-authenticating" and "require[s] no extrinsic evidence of authenticity in order to be admitted."

Section 1746 of Title 28 of the United States Code provides, in relevant part, that "[w]herever, * * * under any rule * * * made pursuant to law, any matter is required or permitted to be supported * * * by the sworn declaration, * * *[or] certificate, * * * in writing of the person making the same * * *, such matter may, with like force and effect, be supported * * * by the unsworn declaration, [or] certificate * * *, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated * * *."

13

records, nor the method or circumstances of the preparation of those business records, indicate a lack of trustworthiness.[4]   Accordingly, plaintiffs have established their entitlement to judgment as a matter of law for damages against Amodeo in the amounts sought therein for unpaid contributions, interest thereon and liquidated damages for the period from July 1, 2008 through August 31, 2008.  (Shaw Decl., Ex. B).  Therefore, so much of plaintiffs' motion as seeks summary judgment on their claims against Amodeo for unpaid contributions, interest thereon and liquidated damages is granted to the extent that plaintiffs are awarded:

> (1) unpaid contributions (a) to NPF in the amount of twenty-eight thousand four hundred sixty-one dollars and forty-five cents ($28,461.45), (b) to NEMI in the amount of one hundred four dollars and forty cents ($104.40), (c) to SMOHI in the amount of sixty-nine dollars and sixty-one cents ($69.61), (d) to ITI in the amount of four hundred seventeen dollars and sixty-six cents ($417.66), and (e) to SASMI in the amount of six thousand one hundred seven dollars and fifty-nine cents ($6,107.59);

> (2) interest thereon (a) to NPF in the amount of eighteen thousand five hundred eighty-five dollars and forty-five cents ($18,585.45), (b) to NEMI in the amount of sixty-eight dollars and nineteen cents ($68.19), (c) to SMOHI in the amount of forty-five dollars and forty-six cents ($45.46), (d) to ITI in the amount of two hundred seventy-two dollars and eighty-two cents ($272.82), and (e) to SASMI in the amount of three thousand nine hundred ninety-four dollars and ninety-seven cents ($3,994.97); and

> (3) liquidated damages (a) to NPF in the amount of five thousand six hundred ninety-two dollars and twenty-eight cents ($5,692.28) (b) to NEMI in the amount

---

[4]  Although defendants challenge the business records on the basis that plaintiffs failed to submit a list of the hours worked or the number of participants employed by RMTI, upon which the amount of contributions due the Funds is ascertained under the CBA, the omission of such information does not affect the trustworthiness of those records since Mr. Shaw avers, *inter alia*, that the Schedules of Past Contributions are produced from the information provided to them in the monthly remittance reports submitted by the employer itself, (Shaw Decl., ¶ 22), for whom Amodeo acted as a fiduciary within the meaning of ERISA.  Moreover, defendants have failed to submit any evidence to contradict those records or upon which a jury could reasonably find for Amodeo on the issue of the amount of unpaid contributions, interest thereon and liquidated damages due the Funds during the period from July 1, 2008 through August 31, 2008.

of twenty dollars and eighty-five cents ($20.85), (c) to SMOHI in the amount of thirteen dollars and ninety cents ($13.90), (d) to ITI in the amount of eighty-three dollars and fifty-one cents ($83.51), and (e) to SASMI in the amount of one thousand two hundred twenty-one dollars and fifty-one cents ($1,221.51),

for a total award on their claims against Amodeo for unpaid contributions, interest thereon and liquidated damages for the period July 1, 2008 through August 1, 2008 in the amount of sixty-five thousand one hundred fifty-nine dollars and sixty-five cents ($65,159.65).

However, plaintiffs have not established their entitlement to judgment as a matter of law on their claims against Amodeo for unpaid contributions, interest thereon and liquidated damages for the period from September 1, 2008 through October 31, 2008, which were due to be paid on October 20, 2008 and November 20, 2008, respectively, (Shaw Decl., Ex. C), i.e., after Amodeo ceased being a fiduciary under ERISA. With respect to that time period, it cannot be ascertained from the record whether any breach of fiduciary duty and/or conversion of property due the Funds by Amodeo on or before September 20, 2008, when he ceased being a fiduciary under ERISA, "set in motion the forces which caused the actual damage of which the plaintiffs complain," Burke, 250 F. Supp. 2d at 269, i.e., RMTI's and/or Iorio's failure to pay the contributions due the Funds for September and October 2008 on October 20, 2008 and November 20, 2008, respectively. Accordingly, the branch of plaintiffs' motion seeking damages for unpaid contributions, interest thereon and liquidated damages for the period from September 1, 2008 through October 31, 2008 is denied. A trial on the issue of Amodeo's liability for unpaid contributions, interest thereon and liquidated damages during the period from September 1, 2008 through October 31, 2008 will be held before me **on June 29, 2015 at 10:00 a.m.** in Courtroom 1010 at the Central Islip Courthouse, located at 100 Federal Plaza, Central Islip, New York 11722.

2.     Attorney's Fees

Plaintiffs also seek to recover attorney's fees in the amount of fifty-five thousand five hundred ninety-seven dollars and fifty cents ($55,597.50), (Plf. 56.1 Stat., ¶ 5),based upon, *inter alia*: (a) an hourly rate of (i) three hundred dollars ($300.00) for the one hundred thirty-three (133) hours of work performed by Jeffrey S. Dubin, Esq., the principal of Jeffrey S. Dubin, P.C., on this case[5]; (b) an hourly rate of (i) two hundred twenty-five dollars ($225.00) for the six and a half (6.5) hours of work performed by Mr. Dubin's current associate, Amy E. Strang, Esq., on this case; and (c) an hourly rate of one hundred seventy-five dollars ($175.00) for the one hundred eighteen and three-tenths (118.3) hours of work performed by Mr. Dubin's former associate, Doreen Nanda, Esq., on this case.  (See Declaration of Jeffrey S. Dubin ["Dubin Decl."], ¶¶ 22-23 and Ex. G).

Defendants contend, *inter alia*, that Mr. Dubin's time records "are quite overreaching and vague," (Levine Aff., ¶ 25), and that the total amount sought by plaintiffs for attorney's fees "is an additional overcharge."  (Id.)

Under the "American Rule" "historically applied" by courts in the United States, Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 186 (2d Cir. 2008), "parties are ordinarily required to bear their own attorney's fees * * * absent explicit statutory authority."  Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and

---

[5]  Although Mr. Dubin avers that his hourly rate is three hundred dollars ($300.00), the time records he submits in support of his application indicate that he billed at an hourly rate of two hundred fifty dollars ($250.00) until June 2012.  Thus, one hundred twenty-four and a half (124.5) of Mr. Dubin's total hours were billed at an hourly rate of two hundred fifty dollars ($250.00) and only eight and a half hours (8.5) were billed at an hourly rate of three hundred dollars ($300.00).

Human Res., 532 U.S. 598, 602, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001), superceded on other grounds by Open Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524.  As noted above, Section 502(g)(2) of ERISA provides, in relevant part, that "[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan– * * * (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, * * *."  29 U.S.C. § 1132(g)(2).  "[A]n award of attorney fees and costs is * * * mandatory under subsection (2), of section 1132(g)."  New York State Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc., 92 F.3d 127, 135 (2d Cir. 1996); see also Richardson v. Laws Constr. Corp., 557 F. App'x 57, 59 (2d Cir. Feb. 13, 2014) (summary order) ("When trustees prevail in an ERISA action for unpaid contributions, 29 U.S.C. § 1132(g)(2)(D) mandates an award of 'reasonable attorney's fees and costs of the action, to be paid by the defendant[.]" (quotations and citation omitted)).

In calculating attorney's fees, the district court must first determine the 'lodestar–the product of a reasonable hourly rate and the reasonable number of hours required by the case–[which] creates a presumptively reasonable fee.'" Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014) (brackets in original) (quoting Millea v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011)); see also Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable [attorney's] fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."); McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 97 (2d Cir. 2006) ("In calculating attorney's fee awards, district courts use the lodestar method—hours reasonably expended multiplied by a reasonable

hourly rate.")  The burden is on the fee applicant to submit evidence to support the number of hours expended and the rates claimed.  Hensley, 461 U.S. at 437, 103 S.Ct. 1933.

a.      Reasonable Hourly Rate

"[A] presumptively reasonable [attorney's] fee "boils down to 'what a reasonable, paying client would be willing to pay,' given that such a party wishes 'to spend the minimum necessary to litigate the case effectively.'" Simmons v. New York City Transit Authority, 575 F.3d 170, 174 (2d Cir. 2009) (quoting Arbor Hill, 522 F.3d at 184); accord Bergerson v. New York State Office of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289-90 (2d Cir. 2011). Under the "forum rule" applicable in this Circuit, "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Simmons, 575 F.3d at 174 (quotations and citations omitted); accord Bergerson, 652 F.3d at 290; see also Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ("[T]he lodestar looks to the prevailing market rates in the relevant community." (quotations and citation omitted)).  Thus, in determining a reasonable hourly rate, the court should consider the prevailing rates of lawyers with comparable skill, experience and reputation in the district in which the action was commenced and litigated.  See Reiter v. MTA New York City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006); McDonald, 450 F.3d at 96. Rates should be "current rather than historic hourly rates." Reiter, 457 F.3d at 232 (quoting Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998)).

Recent prevailing hourly rates for attorneys practicing in the Eastern District of New York are: (a) between three hundred to four hundred fifty dollars ($300.00-$450.00) for partners

in large law firms and attorneys with extensive litigation experience or significant experience in the particular area of law at issue, see, e.g. Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Sanders Constr., Inc., No. 13-cv-5102, 2015 WL 1608039, at * 4 (E.D.N.Y. Apr. 10, 2015) ("Courts have awarded rates of $200 to $400 per hour for partners in this district"); Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. CMI Casework & Millwork, Inc., No. 14-cv-2891, 2015 WL 1198652, at * 13 (E.D.N.Y. Mar. 14, 2015) ("Prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour"); Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 261 (E.D.N.Y. 2014) (finding that "[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately $300-$450 for partners * * *" [quotations and citation omitted]); Hugee v. Kimso Apts., LLC, 852 F. Supp. 2d 281, 300 (E.D.N.Y. 2012) ("The highest rates in this district are reserved for expert trial attorneys with extensive experience before the federal bar, who specialize in the [area of law at issue] and are recognized by their peers as leaders and experts in their fields"); (b) between two hundred to three hundred twenty-five dollars ($200.00-$325.00) for senior associates or attorneys with more limited experience, see, e.g. Sanders Constr., 2015 WL 1608039, at * 4 (finding that an hourly rate of between two hundred dollars ($200.00) and three hundred dollars ($300.00) for senior associates was reasonable); Trustees of Local 813 Pension Trust Fund v. Highbuilt Contracting Corp., No. 14-cv-2099, 2015 WL 1529677, at * 8 (E.D.N.Y. Mar. 31, 2015) (finding an hourly rate of three hundred dollars ($300.00) to be reasonable for a sixth-year associate); Cohen v. Narragansett Bay Ins. Co., No. 14-cv-3623, 2014 WL 6673846, at * 3 n. 4 (E.D.N.Y. Nov. 24,

2014) (finding that hourly rates of two hundred dollars ($200.00) and two hundred fifty dollars ($250.00) were reasonable for attorneys who received their law degrees approximately three (3) years ago and seven (7) years ago, respectively); Sass, 6 F. Supp. 3d at 261 (finding that "[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately * * * $200-$325 for senior associates * * *"); and (c) between one hundred to two hundred dollars ($100.00-$200.00) for junior associates or attorneys with little or no experience.  See, e.g. Sanders Constr., 2015 WL 1608039, at * 4 (finding that an hourly rate of one hundred dollars ($100.00) to two hundred dollars ($200.00) is reasonable for junior associates); Highbuilt Contracting, 2015 WL 1529677, at * 8 (finding that an hourly rate of one hundred seventy-five dollars ($175.00) was reasonable for a second year associate); Sass, 6 F. Supp. 3d at 261 (finding that "[r]ecent opinions issued by courts within the Eastern District of New York have found reasonable hourly rates to be approximately * * * $100-$200 for junior associates[,]" and that one hundred seventy-five dollars [$175.00] was a reasonable hourly rate for junior associates).  "Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of "reasonable" attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys.'"  Sanders Constr., 2015 WL 1608039, at * 4 (quoting Siracuse v. Program for Dev. of Human Potential, No. 07-cv-2205, 2012 WL 1624291, at * 30 (E.D.N.Y. Apr. 30, 2012)); see also K.L. v. Warwick Valley Cent. Sch. Dist., 584 F. App'x 17, 19 (2d Cir. Nov. 25, 2014) (summary order) (holding that in determining a reasonable hourly rate, district courts should consider, *inter alia*, the nature and difficulty of the case and "the level of skill required to perform the legal services properly" (quotations and citation omitted)); Brown v.

Green 317 Madison, LLC, No. 11 CV 4466, 2014 WL 1237448, at * 8 (E.D.N.Y. Feb. 4, 2014), report and recommendation adopted by 2014 WL 1237127 (E.D.N.Y. Mar. 25, 2014) ("[B]illing rates in this district vary widely depending on the nature and difficulty of the case and the experience of the attorneys involved.") Moreover, "the size and caliber of a firm may also be considered when determining a reasonable hourly rate * * *." Bobrow Palumbo Sales, Inc. v. Broan-Nutone LLC, 549 F. Supp. 2d 274, 280 (E.D.N.Y. 2008); see also Suggs v. Crosslands Transp., Inc., No. 13-cv-6731, 2015 WL 1443221, at * 11 (E.D.N.Y. Mar. 27, 2015) ("The small size of [the] law firm is also a factor in determining a reasonable hourly rate."); Hugee, 852 F. Supp. 2d at 299 ("The size of the firm may be considered [in determining a reasonable hourly rate], as large firms tend to charge higher hourly rates than small firms.")

i.      Mr. Dubin

Mr. Dubin is a principal of Jeffrey S. Dubin, P.C.; has been admitted to practice, and has practiced law, *inter alia*, in the Courts of the State of New York for more than forty-five (45) years, and in this Court for more than forty (40) years; has been engaged in the practice of labor relations law and employee benefits law for more than forty-two (42) years; and has a Master of Laws (LL.M.) degree in labor law from the New York University School of Law. (Dubin Decl., ¶¶ 19-20). Accordingly, Mr. Dubin's current hourly rate of three hundred dollars ($300.00) is reasonable.

ii.      Ms. Nanda and Ms. Strang

Since plaintiffs do not provide any information regarding Ms. Nanda's or Ms. Strang's

legal education or experience, they are awarded attorney's fees at an hourly rate of one hundred fifty dollars ($150.00) for services performed by both Ms. Nanda and Ms. Strang on this case.

b.     Hours Reasonably Expended

"Applications for awards of fees must be documented by time records." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009); see also McDonald, 450 F.3d at 96 ("In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits, and other materials."); Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done.") "The time records submitted in support of an application for attorney's fees must be sufficiently detailed to determine the reasonableness of the hours claimed for any given task." Parrish v. Sollecito, 280 F. Supp. 2d 145, 171 (S.D.N.Y. 2003); accord Trustees of Plumbers Local Union No. 1 Welfare Fund, Additional Sec. Benefit Fund, Vacation & Holiday Fund, Trade Educ. Fund, & 401(K) Sav. Plan v. Temperini Mech., Inc., No. 12 Civ. 5646, 2014 WL 4678025, at * 1 (E.D.N.Y. Sept. 9, 2014). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 432, 103 S. Ct. 1933.

"[O]nly those hours 'reasonably expended' are to be awarded." McDonald, 450 F.3d at 96 (quoting Hensley, 461 U.S. at 434-35, 103 S. Ct. 1933). In determining the amount of hours reasonably expended, the court must:

> "examine the hours expended by counsel and the value of the work
> product of the particular expenditures to the client's case. Efforts

22

> put into research, briefing and the preparation of a case can expand
> to fill the time available, and some judgment must be made in the
> awarding of fees as to diminishing returns from such further
> efforts. * * * In making this examination, the district court does
> not play the role of an uninformed arbiter but may look to its own
> familiarity with the case and its experience generally as well as to
> the evidentiary submissions and arguments of the parties.
> (Citations omitted)."

Gierlinger, 160 F.3d at 876; see also Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997)

("In reviewing a fee application, the district court examines the particular hours expended by

counsel with a view to the value of the work product of the specific expenditures to the client's

case.")

"[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the

attorney's fee calculation. See Hensley, 461 U.S. at 434, 103 S.Ct. 1933; see also Bliven, 579

F.3d at 213; Kirsch, 148 F.3d at 173. In addition, "[c]ourts may reduce the number of hours in a

fee application where the time entries submitted by counsel are too vague to sufficiently

document the hours claimed." Barclays Capital Inc. v. Theflyonthewall.com, No. 06 Civ. 4908,

2010 WL 2640095, at * 4 (S.D.N.Y. June 30, 2010); see also Tucker v. City of New York, 704 F.

Supp. 2d 347, 355 (S.D.N.Y. 2010) ("[F]ee applications must be accompanied by

contemporaneous time records * * * which must adequately identify the general subject matter of

the work that the attorney did during each time slot. * * * This requirement is generally not

satisfied by vague entries such as 'conference with' or 'call to' a specified person * * *, although

the court may be able to deduce the nature and relevance of a generally described time entry

based on its familiarity with the case or other contextual clues."); LV v. New York City Dep't of

Educ., 700 F. Supp. 2d 510, 526 (S.D.N.Y. 2010) (holding that entries that omit information

about the subject matter of the work, e.g., "meeting w/co-counsel" and "conference w/co-

counsel," justify a reduction in the hours expended); Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 313 (S.D.N.Y. 2009) (holding that entries such as "letter to [opposing counsel]," "telephone call to [opposing counsel]" and "discussion with [opposing counsel]" are "overly vague" and "[t]hus courts commonly make percentage reductions for [them].")

"Courts may also make reductions for 'block-billing,' that is, the practice of 'aggregating multiple tasks into one billing entry[,]" Barclays Capital, 2010 WL 2640095, at * 4 (quoting Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010), reconsideration granted on other grounds, 2010 WL 727480 (S.D.N.Y. Mar. 2, 2010) (citation omitted)); see also Linde v. Arab Bank, PLC, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate"), because "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." Linde, 293 F.R.D. at 142; see also LV, 700 F. Supp. 2d at 525 (holding that since "block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed[,] * * * courts have found it appropriate to cut hours across the board by some percentage."); Miroglio, 629 F. Supp. 2d at 313-14 ("Block entries * * * have a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary. * * * Reductions are appropriate based on such entries as well." (quotations, alterations and citations omitted)). Nonetheless, "[w]hile 'block-billing' is disfavored and may lack the specificity required for an award of attorneys' fees, it is not prohibited as long as the court can determine the reasonableness

of the work performed." Adorno, 685 F. Supp. 2d at 515.

Moreover, "work on an unsuccessful claim [based on different facts and legal theories than the successful claim(s)] cannot be deemed to have been expended in pursuit of the ultimate result achieved * * * and therefore no fee may be awarded for services on the unsuccessful claim." Hensley, 461 U.S. at 435, 103 S. Ct. 1933 (quotations and citation omitted); see also Kirsch, 148 F.3d at 173 ("A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories[.]" (quotations and citation omitted)).

Furthermore, "[w]hen calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting." Millea, 658 F.3d at 168. "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar[,]" id.; see also Finch v. New York State Office of Children and Family Services, 861 F. Supp. 2d 145, 152 (S.D.N.Y. 2012) (accord); except that "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting [or unsuccessful fee-shifting] claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting [or unsuccessful fee-shifting] claims in his complaint." Millea, 658 F.3d at 168 n. 4.

Likewise, fees should not be awarded for time expended on an unsuccessful motion, see, e.g. Quaratino v. Tiffany & Co., 166 F.3d 422, 427 (2d Cir. 1999) (affirming the district court's finding, *inter alia*, that fees should not be awarded for time spent on the plaintiff's unsuccessful motion for a new trial); Custodio v. American Chain Link and Construction, Inc., No. 06 Civ.

7148, 2014 WL 116147, at * 2 (S.D.N.Y. Jan. 13, 2014) (recommending that hours spent on an unsuccessful class certification motion be deducted from the attorneys' time), or on requests for adjournments or extensions of time.  See, e.g. Bridges, 102 F.3d at 59 (affirming reduction of attorneys' fees due to, *inter alia*, time spent requesting extensions); Soler v. G&U, Inc., 801 F. Supp. 1056, 1063 (S.D.N.Y. 1992) (excluding from award of attorney's fees "time spent by * * * attorneys * * * seeking adjournments and extensions.")

Courts may also deduct "time spent on clerical tasks, such as faxing documents, preparing duplicates, serving papers on defendants, and filing documents * * *."  Miroglio, 629 F. Supp. 2d at 314; see also Bridges, 102 F.3d at 59 (affirming reduction of attorney's fees due to, *inter alia*, clerical and administrative tasks); Kahlil v. Original Old Hempstead Restaurant, Inc., 657 F. Supp. 2d 470, 477 (S.D.N.Y. 2009) (holding that attorneys "should not be compensated for the time * * * spent executing purely clerical tasks, like downloading documents, * * * filing, and faxing documents."); Short v. Manhattan Apartments, Inc., 286 F.R.D. 248, 255 (S.D.N.Y. 2012) ("A court may reduce requested fees if the attorneys' documentation of their hours * * * reflect work that could or should have been completed by a paralegal or secretary."); G.B. ex rel. N.B. v. Tuxedo Union Free School District, 894 F. Supp. 2d 415, 439 (S.D.N.Y. 2012) (holding that an attorney "should not be fully reimbursed for the time she spent reorganizing the file and preparing exhibits * * * [because] preparation of trial exhibits is * * * work properly performed by paralegals, and is reimbursable as such[,] * * * [and] reorganizing the file * * * is a clerical non-reimbursable task."); Soler, 801 F. Supp. at 1063 (excluding from attorney's fees "time spent * * * by attorneys organizing files * * *.")

In reducing the amount of attorney's fees, the court may exclude the excessive and

unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours. See McDonald, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application (quotations and citation omitted)); Kirsch, 148 F.3d at 173 (accord).

i.       Mr. Dubin

Plaintiffs are not entitled to recover any attorney's fees from Amodeo for work performed by Mr. Dubin (a) before Amodeo was even joined as a defendant in this case; (b) solely with respect to plaintiffs' claims against RMTI and Iorio, e.g., for drafting a "Default Judgment Package" against RMTI and Iorio[6], "analy[zing]" RMTI's and Iorio's answer, "[r]esearch regarding effect of bankruptcy stay on individual defendant * * *," researching, drafting and filing "opposition to [RMTI's] motion to stay proceedings" and motion to sever, etc.; and (c) on claims or motions that were unsuccessful or never asserted, e.g., for performing "[r]esearch regarding amending the complaint" on June 17, 2009 when the complaint was never amended a second time, for performing "[r]esearch regarding RICO claim * * *," when no RICO claim was ever asserted in this case, etc.

Mr. Dubin also frequently billed for performing clerical or administrative tasks, such as filing, docketing and transmitting documents and information; calendaring conferences and filing dates; etc. Moreover, Mr. Dubin repeatedly billed three-tenths (.3) of an hour, or eighteen (18) minutes, for reviewing and docketing a "Clerk's Confirmation of Filing of [various documents,

---

[6] Plaintiffs are also not entitled to recover attorney's fees for work Mr. Dubin performed on the motion for a default judgment against RMTI and Iorio because he ultimately withdrew that motion.

e.g., "Amended Summons on two individuals and two corporations," his request for a conference, etc.]," which is clearly excessive. Moreover, on April 6, 2009, three (3) days *after* he billed for reviewing and docketing the "Clerk's Confirmation of Filing of Amended Summons on two individuals and two corporations]," Mr. Dubin billed another four-tenths (.4) of an hour, or twenty-four (24) minutes, for "fil[ing] original summons; affidavits of service; proofs of ECF filing for two corporate and two individual defendants." This Court cannot discern how Mr. Dubin could have billed for reviewing the Clerk's confirmation of filing of the amended summonses before he actually filed the amended summonses. Moreover, Mr. Dubin already billed three-tenths (.3) of an hour for, *inter alia*, docketing the affidavit of service on Amodeo on March 24, 2009; another three-tenths (.3) of an hour for, *inter alia*, docketing an "affidavit of service on def." on April 1, 2009; and yet another three-tenths (.3) of an hour for, *inter alia*, docketing "affidavits of service on defendant corporations" on April 2, 2009, so the April 6, 2009 entry is seemingly duplicative. Furthermore, I cannot discern a reason for Mr. Dubin to file "proofs of ECF filing for two corporate and two individual defendants" on April 6, 2009 since the proofs of ECF filing came from the Court itself.[7]

In addition, most of Mr. Dubin's billing entries are "block-billed" and improperly include clerical tasks, e.g., docketing, filing and transmitting documents and information, and/or vague entries, e.g., "draft memo to KAA," absent any indication of who KAA is and, often, of the subject matter of the memorandum. See, e.g. Chopen v. Olive Vine, Inc., No. 12-cv-2269, 2015 WL 1514390, at * 15 (E.D.N.Y. Mar. 13, 2015), report and recommendation adopted as modified

---

[7] Even if the April 6, 2009 billing entry actually pertains to the "original summons" against RMTI and Iorio, and not the "amended summones," Mr. Dubin already billed for filing those summonses as well, i.e., on February 18, 2009.

by 2015 WL 1542082 (E.D.N.Y. Mar. 31, 2015) ("The Second Circuit has upheld a district court's reduction in hours in light of 'concerns regarding unspecified conferences, telephone calls, email correspondence, and reviews.'" (quoting Matusick v. Erie Cnty. Water Auth., 757 F.3d 31, 64-65 (2d Cir. 2014));  Larsen v. JBC Legal Grp., P.C., 588 F. Supp. 2d 360, 364-65 (E.D.N.Y. 2008) (reducing attorney's fees for vague billing entries merely indicating that counsel engaged in a telephone call or correspondence with another person or the Court, without detailing the subject matter of the call or correspondence).  Accordingly, it cannot be discerned from the block-billed entries whether the time billed for each task was reasonable.

In light of the deficiencies in Mr. Dubin's billing entries, the one hundred thirty-three (133) hours for which he seeks to be compensated are reduced across-the-board by thirty percent (30%), i.e., to ninety-three and one-tenth (93.1) hours.  Accordingly, the branch of plaintiffs' motion seeking summary judgment on their claim for attorney's fees for the work performed by Mr. Dubin on this case to date is granted to the extent that plaintiffs are awarded attorney's fees for the work performed by Mr. Dubin on this case to date in the amount of twenty-seven thousand nine hundred thirty dollars ($27,930.00).

ii.    Ms. Nanda

Many of Ms. Nanda's time records contain vague entries such as "prepare for trial."  See, e.g. Dotson v. City of Syracuse, No. 5:04-cv-1388, 2012 WL 4491095, at * 6 (N.D.N.Y. Sept. 28, 2012), aff'd, 549 F. App'x 6 (2d Cir. Nov. 27, 2013) (finding that billing entries containing "vague descriptions of work performed such as * * * 'trial preparation' * * * do not permit th[e] Court to conduct a meaningful review as to whether the time was reasonable or appropriate.");

Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (finding that vague billing entries such as "trial preparation" "do not enable a court to determine whether the hours are duplicative or excessive and should not be allowed."); Marshall v. State of New York Div. of State Police, 31 F. Supp. 2d 100, 106 (N.D.N.Y. 1998) ("Plaintiff's vague and blanket description of 'prepare for trial' * * * does not adequately inform the Court of the nature and extent of the work performed and therefore provides an inadequate basis to determine the reasonableness of th[o]se claimed hours.")  Moreover, Ms. Nanda billed for preparing for trial in May, June and September 2012, when no date for a trial had even been scheduled yet.

Many of Ms. Nanda's billing entries are also excessive.  For example, Ms. Nanda billed eight and seven-tenths (8.7) hours drafting a memorandum to Mr. Dubin regarding moving for partial summary judgment on the issue of Amodeo's individual liability; another nineteen (19) hours drafting the motion for partial summary judgment; nine and seven-tenths (9.7) hours to revise the motion; and an additional two and a half (2.5) hours to prepare thirteen (13) exhibits for the motion, which is a clerical task.  Billing a total of thirty-nine (39) hours and fifty-four (54) minutes to work first on a memorandum presumably addressing the viability of such a motion, then on a motion consisting of a two (2)-page notice of motion, four (4)-page 56.1 Statement, twelve (12)-page declaration, and eleven (11)-page memorandum of law raising three (3) points, including the standard of review on a motion for summary judgment, is duplicative and excessive.  In addition, Ms. Nanda billed more than three and a half (3.5) hours for "analy[zing]" Amodeo's response to the motion for summary judgment,[8] and twenty-three and a half (23.5)

_____

[8]  Since Ms. Nanda "block-billed" one and two-tenths (1.2) hours for "Prepar[ing] for trial[,] Review[ing] defendant's arguments and authorities[,] [and] Draft[ing] summary[]" on September 24, 2012, the Court cannot discern the total number of hours she actually billed for

hours for researching and drafting "Reply Papers" on the motion for partial summary judgment consisting of a seven (7)-page declaration and nine (9)-page reply memorandum of law, which is excessive.

Similarly, Ms. Nanda billed three and one-tenth (3.1) hours to review defendants' Rule 60(b) motion and twenty-two (22) hours to draft an opposition thereto consisting of a nine (9)-page declaration and a thirteen (13)-page memorandum of law, exclusive of the table of authorities, affidavits of service and table of contents, which is excessive.

Moreover, Ms. Nanda improperly bills for drafting and docketing a stipulation extending plaintiffs' time to answer defendants' motion to stay.  See, e.g. Bridges, 102 F.3d at 59 (affirming reduction of attorneys' fees due to, *inter alia*, time spent requesting extensions); Soler, 801 F. Supp. at 1063 (excluding from award of attorney's fees "time spent by * * * attorneys * * * seeking adjournments and extensions.")

Furthermore, like Mr. Dubin, Ms. Nanda improperly billed for performing clerical tasks, i.e., filing and docketing documents, and "block-billed," e.g., "Prepare for trial.  Review defendant's arguments and authorities.  Draft summary[;]" "Preparation for Trial: review file and docket; draft request for final pre trial conference[;]" "Preparation for Trial: reviewed damages; update chart & schedule. Docket all information[;]" "Discuss bankruptcy filing with counsel for Coverex.  ECF requests for final conference.  Docket all information[,]" etc., as a result of which the Court cannot determine the reasonableness of many of the hours billed for work performed by Ms. Nanda on this case.

In light of the deficiencies in Ms. Nanda's billing entries, the one hundred eighteen and

analyzing and reviewing defendants' response to the motion for partial summary judgment.

three-tenths (118.3) hours for which she billed are also reduced across-the-board by thirty percent (30%), i.e., to eighty-two and eight-tenths (82.8) hours. Accordingly, the branch of plaintiffs' motion seeking summary judgment on their claim for attorney's fees for the work performed by Ms. Nanda on this case to date is granted to the extent that plaintiffs are awarded attorney's fees for the work performed by Ms. Nanda on this case in the amount of twelve thousand four hundred twenty dollars ($12,420.00).

### iii.    Ms. Strang

Ms. Strang's time records also contain vague, duplicative and/or excessive billing entries, and improper "block-billing." For example, Ms. Strang billed six-tenths (.6) of an hour, or thirty-six (36) minutes, to "[r]eview file regarding Rule 60 motions [and] [c]heck PACER regarding the status of the motion[;]" another nine-tenths (.9) of an hour, or fifty-four (54) minutes to "[r]eview file for status of motions" five (5) months later; one and two-tenths (1.2) of an hour, or seventy-two (72) minutes, for "Extensive file review[,] Review motion papers [and] Draft file memo" two (2) months later; and another nine-tenths (.9) of an hour to "Review District Judge's Rules[,] Review defendants' Rule 60 motion [and] Draft motion to District Judge to proceed with Judgment motion" one (1) day thereafter. Furthermore, both Mr. Dubin and Ms. Strang billed for reviewing and docketing Judge Platt's order denying defendants' Rule 60(b) motion on July 2, 2014.[9]

Furthermore, like Mr. Dubin and Ms. Nanda, Ms. Strang also improperly billed for

---

[9]  Mr. Dubin billed four-tenths (.4) of an hour for doing so, whereas Ms. Strang billed six-tenths (.6) of an hour. However, Ms. Strang's billing entry was "block-billed" and also included "[r]eview[ing] docket."

performing clerical tasks, such as filing and docketing documents.

In light of the deficiencies in Ms. Strang's billing entries, the six and a half (6.5) hours for which she billed for performing work on this case are reduced across-the-board by twenty percent (20%), i.e., to five and two-tenths (5.2) hours. Accordingly, the branch of plaintiffs' motion seeking summary judgment on their claim for attorney's fees for the work performed by Ms. Strang on this case to date is granted to the extent that plaintiffs are awarded attorney's fees for the work performed by Ms. Strang on this case to date in the amount of seven hundred eighty dollars ($780.00). Thus, plaintiffs are awarded attorney's fees for work performed on their behalf in this case to date in the total amount of forty-one thousand one hundred thirty dollars ($41,130.00). Plaintiffs may seek to recover additional attorney's fees for work performed by Mr. Dubin, Ms. Strang, or any other attorney on their behalf in this case, from the date of this Order to the conclusion of this case in the event they prevail upon their remaining claim seeking unpaid contributions, interest thereon and liquidated damages against Amodeo for the period from September 1, 2008 through October 31, 2008.

        3.     Costs

Plaintiffs seek to recover total costs in the amount of two thousand five hundred eighty-three dollars and twenty-two cents ($2,583.22). (Plf. 56.1 Stat. ¶¶ 5-6). Defendants contend, *inter alia*, that plaintiffs failed to serve them with the exhibit itemizing their costs in that amount. (Levine Aff., ¶ 25).

In plaintiffs' itemization of costs filed with the Court, and served upon defendants with their reply papers, there is no indication of (a) the purpose or recipient of the "United Parcel

Service Overnight Delivery" on January 19, 2009 and March 2, 2009; or (b) the purpose and participants of a telephone conference on February 22, 2010[10]. Moreover, defendants are not required to pay the costs relating solely to plaintiffs' claims against RMTI and Iorio which have been severed and dropped from this case, i.e., for serving process upon those parties before defendants were even joined in this case; for serving and sending courtesy copies of their motion for a default judgment against those parties, which was ultimately withdrawn by plaintiff; for performing research to oppose RMTI's motion to stay the case; and for serving other unspecified documents via overnight delivery upon counsel for RMTI. See, e.g. Sanchez v. Abderrahman, No. 10-cv-3641, 2014 WL 4919153, at * 6 (E.D.N.Y. Aug. 12, 2014), report and recommendation adopted as modified 2014 WL 4919258 (E.D.N.Y. Sept. 30, 2014) (reducing the amount of costs because the plaintiffs "fail[ed] to limit their request to the costs incurred in bringing th[e] federal action and to the costs incurred in litigating against the two defaulting defendants."); Laboratorios Rivas, SRL v. Ugly & Beauty, Inc., No. 11-cv-5980, 2013 WL 5977440, at * 18 (S.D.N.Y. Nov. 12, 2013), report and recommendation adopted by 2014 WL 112397 (S.D.N.Y. Jan. 18, 2014); Ensign Yachts, Inc. v. Arrigoni, No. 3:09-cv-209, 2012 WL 4372002, * 7 (D. Conn. Sept. 24, 2012) (declining to award costs for fee that were not attributable to the remaining claims in the action). Furthermore, plaintiffs seemingly billed twice for the same process server fee, i.e., once for "Fee Paid to Process Server for service of amended complaint on corporate and individual defendants," then again for "Fee Paid to Process Server to serve amended summons and complaint on two corporations." Accordingly, plaintiffs are not

---

[10] The Court's docket does not reflect any telephone conference with the Court on that date.

34

entitled to recover those aforementioned costs.

However, as the remaining costs sought by plaintiffs, in the sum of one thousand nine hundred twenty dollars and seventy-nine cents ($1,920.79), are reasonable, see, e.g. Gesualdi v. Blue Jay Estates Dev. Corp., No. 13-cv-6171, 2015 WL 1247079, at * 16 (E.D.N.Y. Mar. 18, 2015), the branch of plaintiffs' motion seeking summary judgment on their claim against Amodeo for costs incurred in prosecuting their claims against him in this action is granted to the extent that plaintiffs are awarded costs in the amount of one thousand nine hundred twenty dollars and seventy-nine cents ($1,920.79). Plaintiffs may seek to recover any additional costs incurred by them from the date of this Order to the conclusion of this case in the event they prevail upon their remaining claim seeking unpaid contributions, interest thereon and liquidated damages against Amodeo for the period from September 1, 2008 through October 31, 2008.

II.     CONCLUSION

For the reasons set forth herein, plaintiffs' claims against Coverex are dismissed in their entirety with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and comply with a Court order and their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on their claims seeking unpaid contributions, interest thereon, liquidated damages, attorney's fees and costs against Amodeo is granted to the extent that plaintiffs are awarded (1) unpaid contributions for the period from July 1, 2008 through August 31, 2008 in the total amount of thirty-five thousand one hundred sixty dollars and seventy-one cents ($35,160.71); (2) interest thereon in the total amount of twenty-two thousand nine hundred sixty-six dollars and eighty-nine cents ($22,966.89); (3) liquidated damages for the

period from July 1, 2008 through August 31, 2008 in the total amount of seven thousand thirty-two dollars and five cents ($7,032.05); (4) attorney's fees in the total amount of forty-one thousand one hundred thirty dollars ($41,130.00); and (5) costs in the total amount of one thousand nine hundred twenty dollars and seventy-nine cents ($1920.79), for a total award of one hundred eight thousand two hundred ten dollars and forty-four cents ($108,210.44), and the motion is otherwise denied.  A trial on the issue of the amount of unpaid contributions, interest thereon and liquidated damages, if any, for which Amodeo is liable to plaintiffs during the period from September 1, 2008 through October 31, 2008 will be held before me **on June 29, 2015 at 10:00 a.m.** in Courtroom 1010 at the Central Islip Courthouse, located at 100 Federal Plaza, Central Islip, New York 11722.  Plaintiffs may seek to recover additional (1) attorney's fees for work performed by Mr. Dubin, Ms. Strang, or any other attorney on their behalf in this case, and (2) costs incurred, from the date of this Order to the conclusion of this case in the event they prevail upon their remaining claims seeking unpaid contributions, interest thereon and liquidated damages against Amodeo for the period from September 1, 2008 through October 31, 2008.

SO ORDERED.

/s/
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 28, 2015
        Central Islip, New York