UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHEET METAL WORKERS' NATIONAL
PENSION FUND, NATIONAL ENERGY
MANAGEMENT INSTITUTE COMMITTEE FOR
THE SHEET METAL AND AIR CONDITIONING
INDUSTRY, SHEET METAL OCCUPATIONAL
HEALTH INSTITUTE TRUST, INTERNATIONAL
TRAINING INSTITUTE FOR THE SHEET
METAL AND AIR CONDITIONING INDUSTRY,
and NATIONAL STABILIZATION AGREEMENT
OF THE SHEET METAL INDUSTRY FUND,

FILED
CLERK

5/27/2016 10:43 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

                                    Plaintiffs,

                                                    **ORDER**
        -against-                                   09-CV-0121 (SJF)(ARL)

MATTHEW AMODEO,

                                    Defendant.
-----------------------------------------------------------------X
FEUERSTEIN, District Judge:

I.      BACKGROUND

        On January 13, 2009, plaintiffs Sheet Metal Workers' National Pension Fund, National

Energy Management Institute Committee for the Sheet Metal and Air Conditioning Industry,

Sheet Metal Occupational Health Institute Trust, International Training Institute for the Sheet

Metal and Air Conditioning Industry and National Stabilization Agreement of the Sheet Metal

Industry Fund (collectively, "plaintiffs"), all employee benefit plans within the meaning of § 3(3)

of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(3), commenced

this action against Rolf's Metal Tops Inc. ("RMTI") and Joseph C. Iorio ("Iorio"), *inter alia*,

pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, seeking, *inter alia*, to enforce the

obligations of RMTI to make contributions to the Funds; to reclaim property of the Funds

1

converted by RMTI and Iorio; and to remedy RMTI's and Iorio's breaches of fiduciary obligations and commission of prohibited transactions. (*See* Docket Entry ["DE"] 1).

On March 6, 2009, plaintiffs filed a First Amended Complaint, *inter alia*, adding Coverex Corporate Risk Solutions ("Coverex") and defendant Matthew Amodeo ("Amodeo") as additional defendants to this action and seeking damages to reclaim property of the Funds converted by Coverex and Amodeo and to remedy their breaches of fiduciary obligations and commission of prohibited transactions in the sum of sixty-seven thousand seven hundred twenty-nine dollars and fifty-eight cents ($67,729.58), together with interest thereon, liquidated damages and reasonable attorneys' fees and costs. (DE 4).

By electronic order dated August 24, 2009, the Honorable Arlene R. Lindsay, United States Magistrate Judge, *inter alia*, stayed this case pursuant to 11 U.S.C. § 362(a) due to RMTI's filing of a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on August 16, 2009. By order dated November 17, 2009, upon the joint application of plaintiffs, Coverex and Amodeo, Magistrate Judge Lindsay lifted the stay with respect to plaintiffs' claims against Iorio. (DE 27).

On October 27, 2010, October 28, 2010 and November 9, 2010, Iorio filed letters, *inter alia*, requesting that this action be stayed pursuant to 11 U.S.C. § 362(a) because he had filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on October 20, 2010. (DE 42, 43 and 47, respectively). However, on June 14, 2011, plaintiffs filed a motion to sever their claims against RMTI and Iorio so that they could proceed with their claims against Coverex

and Amodeo in this action. (DE 50). Amodeo, by counsel, opposed plaintiffs motion to sever. (DE 51). During a hearing on the motion held on June 24, 2011, the Honorable Thomas C. Platt, Senior United States District Judge, to whom this case was originally assigned, orally granted plaintiffs' motion to sever ("the Minute Order"). (*See* Minute Order dated 6/24/2011).

On July 6, 2011, plaintiffs filed a proposed order, *inter alia*, granting their motion to sever, (DE 53), but a written order signed by Judge Platt was never entered on the docket. Although the parties proceeded to litigate plaintiffs' claims against only Amodeo following entry of Judge Platt's Minute Order, the Court's docket never reflected the severance of plaintiffs' claims against RMTI and Iorio, *i.e.*, the docket continued to designate RMTI and Iorio as defendants and to indicate that this case was stayed. Accordingly, on July 9, 2014, following the reassignment of this case to me, I, *inter alia*, issued a written order ("the Severance Order") severing plaintiffs' claims against RMTI and Iorio and dropping them from this case pursuant to Rule 21 of the Federal Rules of Civil Procedure, and vacating the stay of this action, (DE 74), in order to correct the mistakes on the docket and effectuate Judge Platt's intent in issuing the Minute Order.

On October 28, 2012, plaintiffs moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for partial summary judgment on their claims against Amodeo.[1] (DE 55-59). By Memorandum and Order dated April 22, 2013 ("the April Order"), Judge Platt granted summary judgment in favor of plaintiffs on the issue of Amodeo's liability for breach of a fiduciary duty and conversion, finding, *inter alia*, that Amodeo was the Chief Financial Officer ("CFO") of RMTI, (DE 61 at 3); "was a fiduciary within the scope of ERISA and [] exercised discretion and

---

[1] Amodeo, by counsel, submitted opposition to the motion. (DE 56).

authority over the contributions belonging to the [] [F]unds," (*id.* at 12); and "breached his fiduciary duty with respect to plaintiffs' funds and converted the contributions which rightfully belonged to plaintiffs," (*id.* at 1). In the April Order, Judge Platt indicated that "[t]he exact sum of damages and whether plaintiffs are entitled to attorneys' fees and costs shall be determined at trial in this matter." (*Id.* at 13).

On September 18, 2013, Amodeo, by counsel, moved pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure to vacate and set aside the April Order (the "Prior Rule 60 Motion") on the ground that newly discovered evidence demonstrated that he was not a fiduciary under ERISA. (DE 68-70). By letter application dated June 11, 2014, plaintiffs requested that Amodeo's Prior Rule 60 Motion be denied as frivolous and that they be permitted to move for summary judgment on the issue of damages in lieu of the trial. (DE 71). By letter dated June 13, 2014, Amodeo, by counsel, responded to only so much of plaintiffs' June 11, 2014 letter as contended that his Prior Rule 60 Motion was frivolous. (DE 72). Amodeo did not oppose or otherwise address plaintiffs' request for leave to file a summary judgment motion on the issue of damages in lieu of a trial. (*Id.*)

By order dated June 26, 2014 ("the June Order"), Judge Platt denied Amodeo's Prior Rule 60 Motion on the grounds: (1) that all of the newly discovered documents existed as of the date of the April Order; and (2) that Amodeo failed to demonstrate "that he was excusably ignorant of the facts that existed at the time the [April] Order was issued despite exercising due diligence[.]" (DE 73 at 6).

On July 8, 2014, this case was reassigned to me. By order dated July 9, 2014 ("the July Order"), I (1) granted plaintiffs' unopposed application for leave to serve a motion for summary

judgment, in lieu of a trial, on the issue of damages; (2) set a briefing schedule for the summary judgment motion[2]; and (3) ordered plaintiffs to file a status report regarding the status of their claims against Coverex on or before August 11, 2014, or their claims against Coverex would be deemed voluntarily dismissed. Although plaintiffs filed a status report on July 18, 2014, they did not specifically address the status of their claims against Coverex in this action. (DE 75). Accordingly, and since plaintiffs took no steps to prosecute their claims against Coverex in this action for approximately six (6) years, by Order dated May 28, 2015, I, *inter alia*, dismissed plaintiffs' claims against Coverex in their entirety with prejudice pursuant to Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute and to comply with an order of this Court. (DE 84).

The May 28, 2015 Order also: (1) granted plaintiffs' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment on their claims seeking unpaid contributions, interest thereon, liquidated damages, attorney's fees and costs against Amodeo to the extent of awarding plaintiffs (a) unpaid contributions for the period from July 1, 2008 through August 31, 2008 in the total amount of thirty-five thousand one hundred sixty dollars and seventy-one cents ($35,160.71), (b) interest thereon in the total amount of twenty-two thousand nine hundred sixty-six dollars and eighty-nine cents ($22,966.89), (c) liquidated damages for the period from July 1, 2008 through August 31, 2008 in the total amount of seven thousand thirty-two dollars and five cents ($7,032.05), (d) attorney's fees in the total amount of forty-one thousand one hundred thirty dollars ($41,130.00), and (e) costs in the total amount of

---

[2] Amodeo, by counsel, submitted opposition to plaintiffs' summary judgment motion without objection and in accordance with the briefing schedule. (DE 79).

one thousand nine hundred twenty dollars and seventy-nine cents ($1920.79), for a total award of

one hundred eight thousand two hundred ten dollars and forty-four cents ($108,210.44), and

otherwise denied the motion; (2) scheduled a trial on the issue of the amount of unpaid

contributions, interest thereon and liquidated damages, if any, for which Amodeo is liable to

plaintiffs during the period from September 1, 2008 through October 31, 2008 for June 29, 2015

at 10:00 a.m.; and (3) held that plaintiffs could seek to recover additional (a) attorney's fees for

work performed by Mr. Dubin, Ms. Strang, or any other attorney on their behalf in this case, and

(b) costs incurred, from the date of that Order to the conclusion of this case in the event they

prevailed upon their remaining claims seeking unpaid contributions, interest thereon and

liquidated damages against Amodeo for the period from September 1, 2008 through October 31,

2008.[3]  (DE 84).

By letter dated June 8, 2015, plaintiffs advised the Court that they had decided not to

pursue their claims against Amodeo seeking unpaid contributions, interest thereon and liquidated

damages for the period from September 1, 2008 through October 31, 2008 and requested that the

trial be canceled and judgment be entered against Amodeo in the amount of one hundred eight

thousand two hundred ten dollars and forty-four cents ($108,210.44).  (DE 85).  By electronic

order dated June 9, 2015, plaintiffs' application was granted.  Final judgment was entered against

Amodeo in the total amount of one hundred eight thousand two hundred ten dollars and forty-

_____

[3]  At all relevant times, including on the dates of entry of the May 28, 2015 Order and the
final judgment against Amodeo, Amodeo was represented by counsel in this action.  (*See, e.g.*
Affidavit of Matthew Amodeo in Support of Motion to Quash and in Opposition to Motion for
Contempt ["Amodeo Quash Aff."], ¶¶ 19-20; Ex. B, ¶ 8 ["I have been without any counsel and
*pro se* from July 2015 until September 21, 2015 when I retained Mr. Liotti, my current
attorney."]).

four cents ($108,210.44) on June 16, 2015. (DE 86). According to plaintiffs, Amodeo has not paid any part of the judgment to date. (*See* Declaration of Amy E. Strang in Support of Motion for Contempt ["Strang Contempt Decl."], ¶ 7).

Pending before the Court are: (1) plaintiffs' motion to hold Amodeo in contempt pursuant to Rule 45(g) of the Federal Rules of Civil Procedure and Local Civil Rule 83.6 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 83.6") ("Contempt Motion"), (DE 93); (2) Amodeo's cross motion, *inter alia*, to quash a subpoena, pursuant to Rule 45(d)(3) of the Federal Rules of Civil Procedure, and to stay the execution of the judgment against him pursuant to Rule 62 of the Federal Rules of Civil Procedure ("Cross Motion to Quash"), (DE 108-111); (3) Amodeo's motion (a) to extend or reopen his time to file a notice of appeal of the final judgment against him pursuant to Rule 4(a)(5) and (6) of the Federal Rules of Appellate Procedure, (b) to vacate the Orders dated April 22, 2013, June 26, 2014, July 9, 2014, May 28, 2015 and July 16, 2015 and grant a jury trial on the issue of liability and damages, (c) to have me recuse myself from presiding over this case, presumably pursuant to 28 U.S.C. § 455, and (d) to stay the execution of the judgment against him, presumably pursuant to Rule 62 of the Federal Rules of Civil Procedure ("Motion to Reopen"), (DE 104-107); (4) Amodeo's motion to vacate, correct, modify and/or amend the judgment against him pursuant to Rule 60 of the Federal Rules of Civil Procedure and to stay the execution of the judgment against him pursuant to Rule 62(b)(4) of the Federal Rules of Civil Procedure ("Recent Rule 60 Motion"), (DE 118-126); and (5) plaintiffs' motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 ("Sanctions Motion"), (DE 127).

II.     DISCUSSION

        A.      Plaintiffs' Contempt Motion and Amodeo's Cross Motion to Quash

        On September 15, 2015, plaintiffs caused a subpoena to produce documents, information

or objects ("the September Subpoena") to be personally served upon Amodeo.[4]  (*See* Strang

Contempt Decl., Exs. B and C).  The September Subpoena required Amodeo to produce certain

documents and information relevant to his satisfaction of the judgment to plaintiffs' counsel at

their offices in Huntington, New York on September 28, 2015 at 10:00 a.m.  (*Id.*, Ex. B).

        Amodeo contends, *inter alia*, that the affidavit of service of the September Subpoena

"lacked [sic] factual legitimacy" because "[t]he personal description provided [therein] . . . was

actually a reiteration of [his] deposition obtained by the Plaintiff [sic];" "[o]n the alleged date of

service, 9/05/2015 [sic], [he] was never asked to confirm [his] identity by [the process server], an

individual unknown to [him], or any other stranger[;]" and he "wore a play costume for [his]

children once [he] returned home[,] . . . [which] concealed [his] hair color and body mass, so the

[process server] would have noted th[o]se peculiarities if he indeed personally served [him]."

(Amodeo Quash Aff., ¶ 3).  According to Amodeo, unless he stood "face to face" with the

process server, and "lacked a costume, it would be difficult" for the process server to assess his

hair color, height and weight.  (*Id.*)

        According to Amy E. Strang, Esq., one of plaintiffs' counsel, she spoke with Amodeo on

September 17, 2015, at which time he advised her "that he refused to provide any documents that

---

        [4]  The affidavit of service indicates, *inter alia*, that the process server "knew the person so
served to be the person described as the Respondent [in the subpoena] and he identified himself
as such[,]" and described "the person actually served" as being a male, approximately forty (40)
years old, 5' 11" tall and one hundred ninety (190) pounds, with a tan skin color and black hair.
(Strang Contempt Decl., Ex. C).

were requested in the subpoena, especially his tax returns." (Strang Contempt Decl., ¶ 10). Ms. Strang also spoke with Amodeo the following day, at which time "[h]e reiterated his position with regard to the production of documents, and informed [her] that he was going to hire an attorney." (*Id.*, ¶ 11).

Amodeo "disagree[s] and den[ies] Ms. Strang's recollection of [their] conversation" on September 17, 2015, but confirms that on September 18, 2015, he "expressed [his] pursuit to hire an attorney to explain [his] rights and duties pertaining to a potentially forthcoming subpoena[.]" (Amodeo Quash Aff., ¶ 5). According to Amodeo, he also explained to Ms. Strang that he is "on tax extension for the past few years so [he] would be unable to fulfill that request[,] . . . [and] express[ed] [his] hesitation to provide such personal and privileged documents, as income tax returns, before consulting with an attorney . . . ." (*Id.*)

On October 5, 2015, Ms. Strang spoke with Thomas Liotti, Esq., the new attorney retained by Amodeo on September 21, 2015, (*see* Amodeo Quash Aff., Ex. B, ¶ 8), who advised her that since Amodeo intended to move to set aside the judgment, he "did not think that judgment enforcement activities were appropriate at this point in time," notwithstanding that the judgment had been entered against Amodeo more than three (3) months earlier.[5] (Strang Contempt Decl., ¶ 12).

On October 16, 2015, more than three (3) weeks after Amodeo had retained Mr. Liotti as new counsel in this action, plaintiffs served Mr. Liotti with their Contempt Motion, seeking to

---

[5] Amodeo's assertion that plaintiffs failed to notify his new counsel, Mr. Liotti, "of an allegedly outstanding subpoena request," (Amodeo Quash Aff., ¶ 6), is not based upon his personal knowledge and, thus, is of no probative value. Mr. Liotti, himself, makes no such assertion.

hold Amodeo in contempt pursuant to Rule 45(g) of the Federal Rules of Civil Procedure and

Local Civil Rule 83.6 for his failure to produce the documents and information requested in the

September Subpoena.[6] (Strang Contempt Decl., ¶ 13; *see* Docket Entry ["DE"], 88).

Specifically, plaintiffs seek an order fining Amodeo two hundred dollars ($200.00) per day until

he complies with the September Subpoena and awarding them the reasonable attorneys' fees and

costs they incurred in attempting to secure the production of the subpoenaed documents in the

amount of one thousand seven hundred fifty dollars ($1,750.00).

On October 26, 2015, approximately one hundred thirty-two (132) days after the final

judgment was entered against Amodeo in this action, more than one (1) month after Amodeo

retained Mr. Liotti as new counsel to represent him in this action, and ten (10) days after

plaintiffs served Amodeo with their Contempt Motion,[7] Amodeo filed a proposed order to show

cause and temporary restraining order seeking: (1) an order "(a) Pursuant to Fed. R. Civ. P. Rules

4(a)(5)(6) [sic] and (7) enlarging [Amodeo's] time to file a notice of appeal; (b) Vacating the

Memoranda and Order of this Court by Judge Thomas Platt dated April 22, 2013 and June 26,

2014 and those by Judge Sandra J. Feuerstein of July 9, 2014; May 28, 2015 and July 16, 2015

[sic]; (c) . . . granting [Amodeo] a jury trial on the issues of liability and damages; (d) . . .

---

[6] Plaintiffs initially filed their Contempt Motion as unopposed on November 4, 2015, after Amodeo failed to timely serve them with opposition papers on or before October 30, 2015. (DE 93 and 94). By letter application filed on Friday, November 6, 2015 at 5:33 p.m., Amodeo requested, *inter alia*, an extension of time until November 9, 2015 to oppose plaintiffs' Contempt Motion. (DE 95). By Order dated November 9, 2015, I granted Amodeo's application. (DE 98).

[7] Contrary to Amodeo's contention, signing the order to show cause would not have "negated the need for the plaintiffs' contempt application," (Amodeo's Memorandum of Law in Opposition to Contempt Motion ["Amodeo Contempt Mem."] at 1), as plaintiffs' Contempt Motion was served upon him ten (10) days before he filed the proposed order to show cause.

recusing Judge Sandra J. Feuerstein from presiding over this case; (e) Pending a determination on this motion and any appeal therefrom staying . . . plaintiffs from enforcing the orders and judgments entered . . . on July 9, 2014, May 28, 2015 and July 16, 2015 [sic]; and (f) Granting [Amodeo] permission to file a Notice of Appeal out of time . . . ,"[8] (DE 89); and (2) to stay "the proceedings in this matter in the lower court . . . [and] any and all enforcement proceedings" pending the hearing and determination of that motion "and the exhaustion of appellate remedies in this or any other Court[.]" (*Id.*) On that same date, I declined to sign the proposed order to show cause and temporary restraining order since, *inter alia*, there was no indication therein that plaintiffs had been given any notice thereof or explanation for why no such notice was given, *see* Fed. R. Civ. P. 65(b); and the motion did not appear to have any merit.[9] (DE 90). Amodeo requested essentially the same relief by notice of motion served upon plaintiffs' counsel on or

---

[8] Although Amodeo's and Mr. Liotti's affidavit and declaration in support of the proposed order to show cause sought various relief, Amodeo's memorandum of law in support of the proposed order to show cause only included two points: (1) that he was entitled to a jury trial on the issue of liability and damages; and (2) that his time to file an appeal should be reopened pursuant to Rule 4(a)(6) of the Federal Rules of Appellate Procedure.

[9] Specifically, Amodeo failed to demonstrate, *inter alia*, that he "did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the [final] judgment . . . within 21 days after entry[,]" as required by Rule 4(a)(6) of the Federal Rules of Civil Procedure; nor that he was entitled to any of the other relief sought. Indeed, at the time the final judgment was entered on June 16, 2015, Amodeo was still represented by Dustin A. Levine and Vincent Ancona, both of the law firm of Ancona Associates, (*see* Amodeo's Affidavit in Support of the OTSC, ¶ 8), and the Court's docket indicates that notice of entry of the final judgment was electronically mailed to both Mr. Levine and Mr. Ancona on June 16, 2015. (DE 86). Amodeo did not submit an affidavit from either Mr. Levine or Mr. Ancona indicating that they did not, in fact, receive notice of entry of the final judgment; and Mr. Liotti's assertion, "[u]pon information and belief, . . . that defense counsel and defendant did not receive notice of entry of the judgment," (Declaration of Thomas F. Liotti in Support of OTSC, ¶ 23), was insufficient to rebut the presumption of receipt of the electronic notice by Mr. Levine and Mr. Ancona.

about October 30, 2015.[10]  (DE 92, 96 and 97).

By letter dated December 23, 2015, Amodeo provided Ms. Strang with his tax returns for the years 2011 to 2014.  (Reply Declaration of Thomas F. Liotti, Esq. in Further Support of Cross Motion to Quash ["Liotti Quash Reply"], Ex. A).

On January 15, 2015, Ms. Strang received a letter from Mr. Liotti indicating, in relevant part, that Amodeo would "be providing you with responses to your [September] Subpoena by the week of January 18, 2016."  (Declaration of Amy E. Strang in Further Support of Motion for Contempt ["Strang Contempt Reply"], ¶ 11 and Ex. A).  According to Ms. Strang, Amodeo is nonetheless still in contempt of the September Subpoena because his response was "inadequate," insofar as he "has not agreed to provide . . . unredacted copies of his tax returns[,] . . . [and] the tax returns previously provided have been redacted to remove [his] Social Security Number, the name of the tax preparer and information concerning other businesses he is involved in."  (*Id.*, ¶ 11).

Ms. Strang further contends that Amodeo is in contempt of a subpoena requiring him to appear for a deposition on November 20, 2015 at 10:00 a.m. ("the November Subpoena"), which was served upon him by affixing a true copy thereof to the door of his dwelling house or usual place of abode on November 5, 2015 and thereafter mailing a copy thereof to said address on November 9, 2015.  (Strang Contempt Reply, Exs. B and C).  According to Ms. Strang, she discussed scheduling Amodeo's deposition with Mr. Liotti "[o]n numerous occasions," but he

---

[10]  Pursuant to my individual rules, the parties stipulated to extend their time to submit responsive and reply papers on Amodeo's motion until November 19, 2015 and November 30, 2015, respectively.  (DE 96 and 97).  The parties further stipulated to extend Amodeo's time to serve his reply, and to file the fully-briefed motion, until December 7, 2015.  (DE 102).

did not inform her until January 15, 2015 that Amodeo "would not appear until after he filed a

motion to [sic] pursuant to Federal Rule of Civil Procedure 60." (*Id.*, ¶ 13; *see also* Liotti Quash

Reply, ¶ 7).

By letter dated January 20, 2016, Amodeo provided responses to all of plaintiffs'

document and information requests in the September Subpoena, with the exception that he is

"requesting privacy protection" concerning the disclosure of his social security number, date of

birth and financial account numbers pursuant to Rule 5.2(a) of the Federal Rules of Civil

Procedure. (Liotti Quash Reply, Ex. B).

### 1.     Cross Motion to Quash

Rule 45(d)(2) of the Federal Rules of Civil Procedure provides, in relevant part:

> "A person commanded to produce documents or tangible things . . . may serve on
> the party or attorney designated in the subpoena a written objection to inspecting,
> copying, testing or sampling any or all of the materials . . . . The objection must be
> served before the earlier of the time specified for compliance or 14 days after the
> subpoena is served."

Fed. R. Civ. P. 45(d)(2). "Rule 45 contemplates assertion of all objections to document

production within 14 days," *DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d

75, 81 (2d Cir. 1998), and "[t]he fourteen day time limitation to serve written objections to a

subpoena is crucial as failure to do so typically constitutes a waiver of such objections." *In re

Corso*, 328 B.R. 375, 384 (E.D.N.Y. 2005); *see also Concord Boat Corp. v. Brunswick Corp.*,

169 F.R.D. 44, 48 (S.D.N.Y. 1996) ("The failure to serve written objections to a subpoena within

the time specified by [former] Rule 45(c)(2)(B) [current Rule 45(d)(2)] typically constitutes a

waiver of such objections.") It is undisputed that Amodeo did not timely serve any written

objections to the September Subpoena on or before September 28, 2015, *i.e.*, the time specified therein for compliance.

Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure provides, in relevant part:

> "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

Fed. R. Civ. P. 45(d)(3)(A). "The burden of persuasion on a motion to quash a subpoena . . . is borne by the movant." *In re Corso*, 328 B.R. at 384; *accord John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012).

Amodeo contends, *inter alia*, that the subpoena should be quashed because: (1) it "'fails to allow a reasonable time to comply' because of its vague and broad scope[,]" (Amodeo Quash Aff., ¶ 9) (quoting Fed. R. Civ. P. 45(d)(3)(A)(i)); (2) it "requires 'disclosure of privileged or other protected matter, if no exception or waiver applies[,]'" (*id.*, ¶ 10) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)); and (3) he is a self-employed individual and, thus, "disclosing informational assets and bank statements would disclose trade secrets, confidential research, and commercial information which could be identified based on historical purchases and/or purchase records and depositions," (*id.*, ¶ 13) (citing Fed. R. Civ. P. 45(d)(3)(B)(i)). Amodeo further contends that the "request for any historical asset or financial information is extremely superfluous, invasive, unduly burdensome, and irrelevant to their pursuit to collect the Judgment[,] . . . [as] [he] can only potentially satisfy their judgment with present assets," (*id.*, ¶ 12); and that the September Subpoena, if not quashed, "should be modified in scope to limit the undue burden of fulfillment and release of proprietary information as required by [Rule 45(D)(1)] . . . ." (*Id.*, ¶ 8). According

to Amodeo, he is "confused by the broadness and vagueness of the document/information[;] . . . [p]laintiffs' prolific usage of the preposition 'All' in each categorical record request is not only vague in regard to timeframe [sic] but also unnecessarily burdensome in scope[;] . . . [and] [p]laintiffs failed to narrow their request to specific records required to achieve some specified end." (*Id.*)

"Despite the strict time limitations and mechanism to properly object to a subpoena set forth in Fed. R. Civ. P. 45," *In re Corso*, 328 B.R. at 384, Amodeo neither made an attempt to properly object to the September Subpoena, nor sought an extension of time to do so, even though he had retained Mr. Liotti approximately seven (7) days prior to the expiration of the period within which to object to the September Subpoena. Accordingly, any assertions that Amodeo now makes that he did not have to respond to the September Subpoena because it was unduly burdensome, overbroad, or otherwise are untimely. *See, e.g. In re Corso*, 328 B.R. at 384. Since Amodeo did not raise any timely objections to plaintiffs' September Subpoena, or timely move to quash it, he waived his right to object to the September Subpoena. *See, e.g. In re Corso*, 328 B.R. at 384-85.

In any event, as Amodeo has seemingly responded to most of the document and information requests in the September Subpoena, his Cross Motion to Quash is denied. To the extent Amodeo is "requesting privacy protection" pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure, all of his "electronic or paper filing[s]" with this Court may include only the last four (4) digits of his social security number, the year of his birth and the last four (4) digits of any financial account number. *See* Fed. R. Civ. P. 5.2(a)(1), (2) and (4). However, Amodeo shall provide plaintiffs, as the judgment creditors, with his full social security number, date of birth

and financial account numbers, and any bank account statements for the period from January 1, 2015 to date, so that his response is received at the offices of their counsel Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743, **on or before June 24, 2016, or he will be held in contempt of the September Subpoena and this Order pursuant to Rule 45(g) of the Federal Rules of Civil Procedure**.[11]

### 2. Motion for Contempt

"[A] valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991). Rule 45(g) of the Federal Rules of Civil Procedure provides, in relevant part, that "[t]he court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Thus, "Rule 45[g] grants the court the power to hold a party in contempt simply on the basis of failure to comply with a subpoena." *Hunter TBA, Inc. v. Triple V Sales*, 250 F.R.D. 116, 117 (E.D.N.Y. 2008) (quotations and citations omitted); *see also PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) ("The Court has the power under . . . [R]ule [45] to impose contempt simply on the basis of failure to comply with a subpoena.")

---

[11] The branch of Amodeo's Cross Motion to Quash as seeks to stay the execution of the judgment against him "pending a trial on the alleged amount due to the [p]laintiffs[,]" (Amodeo Quash Aff., ¶ 18), pursuant to Rule 62(b) of the Federal Rules of Civil Procedure is denied since at the time he filed the Cross Motion to Quash, he had not yet filed a motion to alter or amend the judgment, or for relief from judgment, pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure, respectively. Indeed, Amodeo requested an extension of time to file such motions concurrently with his request for a stay, (*See* Amodeo Quash Aff., ¶ 17); and Mr. Liotti indicated in his reply declaration in support of the Cross Motion to Quash that he "expect[ed] to file an F.R.C.P. Rule 60 motion during the week of February 1, 2016 . . . ." (Liotti Quash Reply, ¶ 4).

Since Amodeo has now seemingly complied with most of the document and information requests in the September Subpoena in a reasonable manner, plaintiffs' motion for contempt is denied. However, as set forth above, Amodeo shall provide plaintiffs, as the judgment creditors, with his full social security number, date of birth and financial account numbers, and any bank account statements for the period from January 1, 2015 to date, so that his response is received at the offices of their counsel Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743, **on or before June 24, 2016, or he will be held in contempt of the September Subpoena and this Order pursuant to Rule 45(g) of the Federal Rules of Civil Procedure**.

Moreover, plaintiffs improperly raise Amodeo's noncompliance with the November Subpoena for the first time in their reply papers. *See, e.g. Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sciences*, 804 F.3d 178, 192 (2d Cir. 2015) (holding that the plaintiff waived an argument that he failed to address in his original brief); *Manon v. Pons*, 131 F. Supp. 3d 219, 238-39 (S.D.N.Y. 2015) (holding that the "standard rule" that "arguments may not be made for the first time in a reply brief . . . applies with equal force in the District Court." (quotations and citations omitted)). Accordingly, to the extent plaintiffs seek to hold Amodeo in contempt for his failure to comply with the November Subpoena, their application is denied. However, Amodeo shall appear for a deposition at the offices of Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743, **on July 8, 2016**, or another mutually agreeable date

before July 8, 2016, **or he will be held in contempt of the November Subpoena and this**

**Order pursuant to Rule 45(g) of the Federal Rules of Civil Procedure**.

> **FAILURE TO COMPLY WITH ANY PROVISION OF THIS ORDER WILL SUBJECT MATTHEW AMODEO TO A FINDING OF CONTEMPT AND SANCTIONS FOR THAT CONTEMPT INCLUDING THE IMPOSITION OF FINES IN THE AMOUNT OF ONE HUNDRED DOLLARS ($100.00) PER WEEK FOR EACH WEEK THAT HE REMAINS NONCOMPLIANT, PAYABLE TO PLAINTIFFS, BY THEIR COUNSEL, JEFFREY S. DUBIN, P.C., SUBJECT TO ESCALATION ON FURTHER APPLICATION, INCARCERATION, IMPOSITION OF FURTHER COSTS AND ATTORNEYS' FEES AND SUCH OTHER RELIEF AS MAY BE DEEMED APPROPRIATE.**

B.    Amodeo's Motion to Reopen[12]

1.    Recusal

Although the issue of recusal is not argued in Amodeo's memorandum of law in support

of his Motion to Reopen, Mr. Liotti asserts in his declaration in support of that motion that

"[t]here are many reasons why [I] should now recuse [my]self aside from [my] error in reversing

---

[12]  Like the memorandum of law filed in support of his proposed order to show cause, Amodeo's memorandum of law in support of his Motion to Reopen contains only two (2) points: (1) that he is entitled to a jury trial on the issues of both liability and damages; and (2) that his time to file an appeal of the final judgment should be reopened pursuant to Rule 4(a)(6) of the Federal Rules of Appellate Procedure.  Although I consider, *inter alia*, the facts and other arguments raised by Amodeo and Mr. Liotti in their respective affidavit and declaration submitted in support of their original motion papers, I have not considered the new facts and arguments raised by Amodeo for the first time in his reply papers that are not responsive to plaintiffs' opposition papers.  *See U.S. v. George*, 779 F.3d 113, 119 (2d Cir. 2015); *Manon*, 131 F. Supp. 3d at 238-39; *Matera v. Native Eyewear, Inc.*, 355 F. Supp. 2d 680, 682-83 (E.D.N.Y. 2005).  Moreover, Amodeo's arguments seeking relief from the final judgment against him pursuant to Rule 60 are addressed in the section below determining his Recent Rule 60 Motion.

a prior order by Judge Platt relative to his determination that a trial would be held on damages." (Declaration of Thomas F. Liotti in Support of Motion to Reopen ["Liotti Reopen Decl."], ¶ 26). According to Mr. Liotti, "[s]ince [I] ha[ve] already rendered a judgment against [Amodeo] without a trial, it would be improper for [me] to preside over a trial . . . where [I] ha[ve] already determined the facts in issue or at least determined that there are no disputed issues of fact to be determined by a judge or a jury." (*Id.*) Mr. Liotti further asserts, without elaboration, that "[a]side from the . . . pre-judgment and final judgment determinations by [me], there are additional matters going forward involving [him] which militate against [me] continuing on as a jurist in this matter or deciding any part of this application aside from [my] own recusal." (*Id.*, ¶ 27).

28 U.S.C. § 455(a) requires a judge to recuse herself if her "impartiality might reasonably be questioned." *See Cox v. Onondaga County Sheriff's Dep't*, 760 F.3d 139, 150 (2d Cir. 2014). "Under the statute, recusal is required in specific contexts not relevant here as provided for in Section 455(b) and also wherever, an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *Cox*, 760 F.3d at 150 (quotations and citation omitted); *see also S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013) ("The standard for disqualification under 28 U.S.C. § 455(a) is an objective one[;] . . . the question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." (quotations and citations omitted)). The test under Section 455(a) "deals exclusively with appearances. Its purpose is the protection of the public's confidence in the

impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007); *see also Cox*, 760 F.3d at 150 ("The pertinent trigger for recusal is the appearance of partiality[.]" (quotations and citation omitted)). The "central focus is on whether [the] allegations [of bias or partiality], when coupled with the judge's rulings on and conduct regarding them, would lead the public reasonably to believe that [the judge's bias or partiality] affected the manner in which he presided." *Amico*, 486 F.3d at 775. "The question . . . is whether an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012) (quotations, brackets and citation omitted)); *accord Amico*, 486 F.3d at 775.

"To be disqualifying under § 455, the alleged bias and prejudice [] must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case." *Razmilovic*, 738 F.3d at 29 (quotations, alterations, emphasis and citation omitted); *see also ISC Holding*, 688 F.3d at 107 ("In applying § 455(a)'s standard, the Supreme Court has noted that 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceeding, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" (quoting *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)); *U.S. v. Carlton*, 534 F.3d 97, 100 (2d Cir. 2008) (holding that recusal pursuant to Section 455 "is commonly limited to those circumstances in which the alleged partiality stems from an extrajudicial source." (quotations, brackets and citation omitted)). "Bias or prejudice connotes an unfavorable opinion

that is somehow wrongful or inappropriate because it is undeserved, rests on knowledge one ought not to possess, or is excessive." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1053 (2d Cir. 1995) (internal quotations and citation omitted). "[R]ecusal is not warranted where the only challenged conduct consists of judicial rulings, routine trial administration efforts, and ordinary admonishments [] to counsel and to witnesses, where the conduct occurs during judicial proceedings, and where the judge neither (1) relies upon knowledge acquired outside such proceedings nor (2) displays deep-seated and unequivocal antagonism that would render fair judgment impossible." *Razmilovic*, 728 F.3d at 29-30 (alterations, quotations and citations omitted); *see also Gallop v. Cheney*, 645 F.3d 519, 520-21 (2d Cir. 2011) ("Prior rulings are, ordinarily, not a basis for disqualification. . . . [A]bsent a deep-seated favoritism or antagonism that would make fair judgment impossible, rulings are almost invariably [] proper grounds for appeal, not for recusal." (quotations, alterations and citations omitted)).

Mr. Liotti seeks my recusal from this proceeding based only upon my "pre-judgment and final judgment determinations" with which he disagrees and unspecified "additional matters going forward involving [him]." (Liotti Reopen Decl., ¶ 27). Since, *inter alia*, appeal, not recusal, is the appropriate remedy for unfavorable rulings and/or outcomes in a proceeding, and no objective observer would be led to question my impartiality in this proceeding based upon Mr. Liotti's conclusory assertions, the branch of Amodeo's motion seeking my recusal from this proceeding is denied.

2.     Judge Platt's April 22, 2013 and June 26, 2014 Orders

Although Amodeo's memorandum of law only seeks vacatur of the final judgment and prior orders on the basis that they deprived him of his constitutional right to a jury trial, which is addressed below, in his declaration in support of the Motion to Reopen, Mr. Liotti speculates that since this case was "sudden[ly]" reassigned from Judge Platt to me "without explanation" on July 8, 2014, when, according to Mr. Liotti, Judge Platt was eighty-nine (89) years old and "upon information and belief, . . . ha[d] been absent from duty or service since at least June 26, 2014 for medical or other reasons," (Declaration of Thomas F. Liotti in Support of Motion to Reopen ["Liotti Reopen Decl."], ¶¶ 4, 9 and 10), his holding that Amodeo was a fiduciary "was either expediently made because of his ill-health or rendered by others, such as his Law Clerks, in his absence but perhaps with his tacit approval." (*Id.*, ¶ 10). According to Mr. Liotti, "[w]ithout more specifics as to [Judge Platt's] medical and mental condition at the time that he rendered decisions in this case, we cannot tell whether they were competently made[,]" and, thus, "[a] hearing should be held . . . with medical and other testimony being received." (*Id.*)

Similarly, in his affidavit in support of the Motion to Reopen, Amodeo speculates that since Judge Platt "inexplicably cancelled an oral argument on the motion by plaintiffs for partial summary judgment, providing that 'a decision would be issued on paper [instead],'" he must have been "ill, physically unfit or possibly mentally not stable enough to preside over [this] case."[13] (Affidavit of Matthew Amodeo in Support of Motion to Reopen ["Amodeo Reopen

---

[13]   Indeed, there are many reasons other than mental or physical incompetency for why a judge will not hear oral argument on a motion for summary judgment.

Aff."], ¶ 1). Amodeo also reiterates his disagreement with Judge Platt's April 22, 2013 Order

finding that he was a fiduciary subject to ERISA liability.

Since, *inter alia*, Amodeo and Mr. Liotti have not presented any factual or legal support

for their assertions regarding Judge Platt's physical and mental fitness, and Amodeo failed to

timely appeal the final judgment entered against him in this action, the branch of his motion

seeking to vacate Judge Platt's April 22, 2013 and June 26, 2014 Orders, presumably pursuant to

Rule 60(b) of the Federal Rules of Civil Procedure, is denied in its entirety. *See Stevens v.*

*Miller*, 676 F.3d 62, 67 (2d Cir. 2012) ("In no circumstances . . . may a party use a Rule 60(b)

motion as a substitute for an appeal it failed to take in a timely fashion."); *Johnson v. Ganim*, 342

F.3d 105, 117 (2d Cir. 2003) (finding an issue not raised on appeal to be waived); *Selletti v.*

*Carey*, 177 F.R.D. 189, 192 (S.D.N.Y. 1998), *appeal dismissed*, 173 F.3d 104 (2d Cir. 1999)

("[A] Rule 60(b) motion may not be used to circumvent the time limits for appeal." (quotations

and citation omitted)).

### 3.    The Severance Order

Although not raised in his memorandum of law, in his affidavit in support of his Motion

to Reopen Amodeo contends that the branch of this Court's Severance Order severing plaintiffs'

claims against RMTI and Iorio pursuant to Rule 21 of the Federal Rules of Civil Procedure was

erroneous because (1) "plaintiffs were simply looking for a 'deeper pocket,' presuming that to be

[him] [and] [2] [t]he severance decision prevented a more timely collection opportunity for the

plan administrator and members[,] [as] 11 U.S.C. § 523(a)(4) considers fiduciary responsibility

as non-dischargeable under bankruptcy law." (Amodeo Reopen Aff., ¶ 3). Amodeo has not presented any factual or legal support for his first speculative contention. With respect to his latter contention, Amodeo, by his prior counsel, opposed plaintiffs' motion to sever on different grounds than Amodeo asserts now, (*see* DE 51), and he never objected to, or sought reconsideration of, Judge Platt's June 24, 2011 Minute Order granting plaintiffs' motion to sever.[14] Indeed, in his papers filed in opposition to both of plaintiffs' motions seeking partial summary judgment on the issues of liability and damages, respectively, Amodeo's prior counsel indicated, without objection, that plaintiffs' "Motion to Sever [RMTI and Iorio] was granted on June 24, 2011," and attached a copy of Judge Platt's June 24, 2011 Minute Order in support thereof. (DE 54 and 56, ¶ 8 and Ex. E; DE 79 and 81, ¶ 9 and Ex. F).[15] Nor did Amodeo ever object to the branch of the Severance Order severing plaintiffs' claims against RMTI and Iorio and dropping them from this case pursuant to Rule 21 of the Federal Rules of Civil Procedure in order to correct the mistakes on the docket and effectuate Judge Platt's intent in issuing the Minute Order, or timely appeal the final judgment entered against him in this action. The first time Amodeo ever asserted his present objections to the severance of plaintiffs' claims against RMTI and Iorio from this case was in his proposed order to show cause filed on October 26,

---

[14] Although the docket includes an entry designated as a "Response in Opposition re [DE] 50 Notice of Motion to Sever . . .," (DE 54), the actual documents filed thereunder are responsive only to plaintiffs' motion for partial summary judgment on the issue of liability and do not contain any opposition to plaintiffs' motion to sever or Judge Platt's June 24, 2011 Minute Order granting plaintiffs' motion to sever.

[15] Although Mr. Levine's affirmation is dated September 10, 2014, approximately two (2) months after the Severance Order was entered, he does not even refer, much less object, to that order.

2015, more than four (4) years after Judge Platt's June 24, 2011 Minute Order granting plaintiffs' motion to sever. In the interim, the parties proceeded to litigate plaintiffs' claims against only Amodeo without objection. Accordingly, the branch of Amodeo's motion seeking to vacate the Severance Order is denied in its entirety.

4.      The May 28, 2015 Order and Final Judgment against Amodeo

Mr. Liotti contends that "[w]hile Judge Platt provided that a trial on damages was to have occurred, [I] . . . granted summary judgment as to damages[,]" thus depriving Amodeo of "his day in Court; the right to a jury trial[;] or the right to cross-examine any witnesses." (Liotti Reopen Decl., ¶ 16). According to Mr. Liotti, my orders, thus, "superceded [sic] both Judge Platt's orders and the Constitution of the United States." (*Id.*, ¶ 18). The memorandum of law in support of Amodeo's Motion to Reopen further addresses his claim that he is entitled to a jury trial on the issues of liability and damages and that the Court's final judgment and prior orders deprived him of that constitutional right.[16]

---

[16] Although not raised in his memorandum of law, in his affidavit in support of his Motion to Reopen Amodeo further contends that my "deference to Judge Platt's decision concerning [his] liability should be reversed[,]" as should my "decision awarding damages to the Plaintiff [sic] . . . in light of 29 U.S. Code § 1105(a)(3)[,] . . . since [he] made 'reasonable efforts under the circumstances to remedy [Iorio's fiduciary] breach[.]'" (Amodeo Reopen Aff., ¶ 13). Moreover, according to Amodeo, the unpaid contributions for the period from July 1, 2008 through August 31, 2008 "were in fact fully paid," (*id.*, ¶ 26; *see also id.*, ¶¶ 15-18, 27). Amodeo further contends that "[t]he personal liability determination made by Judge Platt pursuant to ERISA fiduciary responsibility laws was improperly applied to non-plan assets[;] . . . [that] liability for the contributions, a.k.a, 'fringe benefits', should have been limited to a corporate liability belonging to [RMTI][;] . . . [and that] the statutory penalties, interest, and collection fees/legal fees imposed in [the] award for damages based on ERISA law should also be reversed." (*Id.*, ¶ 19). Those arguments alleging, in essence, mistakes of law and fact by the

25

Since "there is no right to a jury trial in a suit brought to recover ERISA benefits,"

*O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011); *accord*

*Tischmann v. ITT/Sheraton Corp.*, 145 F.3d 561, 568 (2d Cir. 1998), Amodeo's argument that he

was deprived of his Seventh Amendment right to a trial by jury is without merit.

Moreover, Amodeo essentially consented to proceed on papers by failing to object to

plaintiffs' request to proceed by way of motion for summary judgment in lieu of trial and failing

to timely appeal the final judgment entered against him. In any event, Amodeo has not

demonstrated that I erroneously determined any genuine issue of material fact in finding that

plaintiffs had established their entitlement to judgment as a matter of law for damages against

Amodeo in the amounts sought for unpaid contributions, interest thereon and liquidated damages

for the period from July 1, 2008 through August 31, 2008. Indeed, the May 28, 2015 Order

expressly held:

> "Defendants fail to demonstrate the existence of a genuine dispute of a material
> fact with respect to the issue of damages for which Amodeo is liable, insofar as
> they have not cited to particular materials raising a genuine dispute, nor shown
> that plaintiffs' submissions 'do not establish the absence * * * of a genuine
> dispute, or that [plaintiffs] cannot produce admissible evidence to support [a]
> fact.' Fed. R. Civ. P. 56(c)(1). Moreover, since Amodeo did not submit a
> statement of facts pursuant to Local Civil Rule 56.1(b) with his opposition, I deem
> the facts asserted in plaintiffs' 56.1 Statement, which are supported by the
> admissible evidence of record, to be 'uncontested and admissible.' *T.Y. [v. New
> York City Dep't of Educ.]*, 584 F.3d [412,] 418 [2d Cir. 2009]. Accordingly, the
> only issue on this motion is whether plaintiffs' established their entitlement to
> judgment as a matter of law on their claim for damages against Amodeo."

(DE 84 at 11-12). Accordingly, the branch of Amodeo's motion seeking to vacate the May 28,

2015 Order and final judgment against him is denied.

---

Court, are addressed in the section below considering Amodeo's Recent Rule 60 Motion.

5.      Motion to Reopen Time to Appeal[17]

Paragraph (a) of Section 2107 of Title 28 of the United States Code provides that, with exceptions not relevant here, "no appeal shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree." 28 U.S.C. § 2107(a). "[T]he timely filing of a notice of appeal in a civil case is a jurisdictional requirement." *Bowles v. Russell*, 551 U.S. 205, 214, 127 S. Ct. 2360, 168 L. Ed. 2d 96 (2007); *accord Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, — U.S. —, 134 S. Ct. 773, 779, 187 L. Ed. 2d 669 (2014).

Nonetheless, paragraph (c) of Section 2107 of Title 28 statute provides, in relevant part:

> "[I]f the district court finds– (1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and (2) that no party would be prejudiced, the district court may, upon motion filed within 180 days after entry of the judgment or order or within 14 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal."

28 U.S.C. § 2107(c). Rule 4(a)(6) of the Federal Rules of Appellate Procedure, which "carries § 2107[c] into practice," *Bowles*, 551 U.S. at 208, 127 S. Ct. 2360, makes it clear that all three (3)

---

[17] Although Amodeo also refers to Rule 4(a)(5) of the Federal Rules of Appellate Procedure in his Motion to Reopen, he makes no arguments for why he should be granted an extension of time to file a notice of appeal pursuant to that rule. Nor could he since, *inter alia*, Rule 4(a)(5) requires a party to move "no later than 30 days after the time prescribed by . . . Rule 4(a) expires[.]" Fed. R. App. P. 4(a)(5)(A)(i). Since Amodeo did not seek leave to extend his time to file an appeal on or before August 17, 2015, August 15, 2015 being a Saturday, *see* Fed. R. Civ. P. 6(a)(1)(C), he cannot seek relief under Rule 4(a)(5) of the Federal Rules of Appellate Procedure. *See Goode v. Winkler*, 252 F.3d 242, 245 (2d Cir. 2001).

of the following conditions must be satisfied before a district court may reopen the time to file an appeal: "(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77(d) of the entry of the judgment or order sought to be appeal within 21 days after entry; (B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77(d) of the entry, whichever is earlier; and (C) the court finds that no party would be prejudiced." Fed. R. App. P. 4(a)(6).

"Rule 4(a)(6) was introduced to permit district courts to ease strict sanctions [] imposed on appellants whose notices of appeal are filed late because of their failure to receive notice of entry of a judgment[,]" *Commc'ns Network Int'l, Ltd. v. MCI WorldCom Commc'ns, Inc. (In re WorldCom, Inc.)*, 708 F.3d 327, 333 (2d Cir. 2013) (quotations, alterations and citations omitted), and provides "a limited opportunity for relief in circumstances where the notice of entry of a judgment or order, required to be [served] by the clerk of the district court pursuant to Rule 77(d) of the Federal Rules of Civil Procedure, is either not received by a party or is received so late as to impair the opportunity to file a timely notice of appeal." *Id.* (quotations and citation omitted). "[T]he purpose of the rule was to ease strict sanctions on litigants who had failed to receive notice of the entry of judgment in order to file a timely notice of appeal, whether the fault lay with the clerk or other factors beyond the litigants' control, such as the Postal Service." *Id.* at 336. "There is nothing in the history of the rules, however, to suggest that the drafters sought to provide relief when the fault lies with the litigants themselves." *Id.*

Moreover, "satisfaction of the three conditions of Rule 4(a)(6) is not the end of the

matter. By saying that the district court 'may' grant relief, the rule does not require the district court to grant the relief, even if the requirements are met." *In re Worldcom, Inc.*, 708 F.3d at 335 (quotations and citation omitted). "Although Rule 4(a)(6) relief may be available to a litigant who fails to meet th[e] obligation [to monitor the docket sheet to inform themselves of the entry of orders they wish to appeal], such relief is discretionary and district courts should exercise their discretion mindful of the purposes and structure of Rule 4(a)." *Id.* at 341. "[A]t a minimum, a district court exercising discretion under Rule 4(a)(6) should give substantial weight to indications that the failure of receipt was the litigant's fault." *Id.* at 338.

Mr. Liotti contends, *inter alia*, that Amodeo "was not advised of all of the [challenged] Memoranda, Orders and Judgment or his right to appeal from those matters[;] . . . that his prior attorneys were negligent and ineffective[;] . . . [and that] accordingly, [he] could not exercise his statutory right to timely file a notice of appeal in this action."[18] (Liotti Reopen Decl., ¶¶ 20 and 21). According to Mr. Liotti, this Court "should exercise its sound discretion to extend the time to file a notice of appeal based on the ground that [his] former counsel did not advise [him] . . . of the holdings or his right to appeal from them."[19] (*Id.*, ¶ 23).

---

[18] Contrary to Mr. Liotti's assertion, it is clear from the affidavit Amodeo filed in support of his Recent Rule 60 Motion, discussed below, that Amodeo was notified of the May 28, 2015 Order no later than June 8, 2015. (*See* Amodeo 2016 Aff., ¶¶ 91, 103; Amodeo 2016 Reply, ¶ 18(c)). Moreover, in his affidavit in support of his Cross Motion to Quash, Amodeo asserts, in relevant part, that his "previous counsel failed to timely appeal [the] 5/28/2015 Order as [he] had requested . . . ." (Amodeo Quash Aff., ¶ 19).

[19] Mr. Liotti's additional contention "[u]pon information and belief, . . . that defense counsel and [Amodeo] did not receive notice of entry of the judgment," (Liotti Reopen Decl., ¶ 23), is not based upon his personal knowledge and is of no probative value.

In his affidavit in support of his Motion to Reopen, Amodeo contends that his "attorneys never advised [him] of [his] right to appeal and [he] ha[s] been without any counsel and *pro se* from July, 2015 until September 21, 2015 when [he] retained Mr. Liotti . . . ." (Amodeo Reopen Aff., ¶ 8). However, in his earlier affidavit in support of his Cross Motion to Quash, Amodeo asserts, in relevant part, that his "previous counsel failed to timely appeal [the] 5/28/2015 Order as [he] had requested . . . ." (Amodeo Quash Aff., ¶ 19). Thus, Amodeo was clearly aware of his right to appeal from the final orders and judgments of this Court.

In his memorandum of law in support of his Motion to Reopen, Amodeo contends, *inter alia*, (1) that the issue "is whether [his former] counsel or [he], *pro se*, received the notice of entry of the judgment from the District Court, particularly in a timely manner with an affidavit of service filed[,]" (Amodeo's Memorandum of Law in Support of Motion to Reopen ["Amodeo Reopen Mem."] at 7); (2) that "it is the better practice for plaintiffs' counsel to have served [his] attorney and [him] once he appeared *pro se* with such notice[,]" but they did not do so, (*id.*; *see also id.* at 9); and (3) that "[g]iven the short period from . . . [entry of the] final judgment (74 days) [sic] to the filing of this motion . . . there cannot be a claim that the plaintiffs have suffered real adverse prejudice as defined by decisional law and they can not [sic] make any supportable claim that they took some action in reliance on the expiration of the normal time period for filing a notice of appeal," (*id.* at 11).

In opposition, plaintiffs' counsel asserts, *inter alia*, (1) that on June 17, 2015, their "office called Amodeo and asked him where to send the judgment[,]" (Declaration of Amy E. Strang in Opposition to Amodeo's Motion Enlarging Time to Appeal ["Strang Reopen Decl."], ¶ 13); and

(2) that the following day, (a) "Amodeo left a message instructing [them] to send [the] judgment to the corporate address, P.O. Box 292, Mineola, NY 11501," (*id.*), and (b) the "office mailed a copy of the judgment and the restraining notice to Amodeo" to both that corporate address and the last known address of Amodeo's residence. (*Id.*) In addition, Ms. Strang asserts that on June 23, 2014, she "received a call from Amodeo asking if [they] could settle this action," but they were unable to do so. (*Id.*, ¶ 14). In his reply, Amodeo asserts that he "was not informed of the entry of judgment by the Plaintiffs' attorney, [he] merely discussed potential settlement of their action[] . . . [and] directed any settlement offer documents to be mailed to [him]." (Amodeo Reopen Reply, ¶ 21).

As noted above, at the time the final judgment was entered on June 16, 2015, Amodeo was still represented by Mr. Levine and Mr. Ancona, (*see* Amodeo's Affidavit in Support of the OTSC, ¶ 8; Amodeo Reopen Aff., ¶ 8), and the Court's docket indicates that notice of entry of the final judgment was electronically mailed to both Mr. Levine and Mr. Ancona on June 16, 2015. (DE 86). Amodeo did not submit an affidavit from either Mr. Levine or Mr. Ancona denying receipt of the Clerk's notice of entry of the final judgment and, in fact, Amodeo, himself, does not actually deny that either he or his then-counsel ever received timely notice of entry of the final judgment.[20] Since Amodeo, both himself and by counsel, clearly received notice of entry of the final judgment within twenty-one (21) days after its entry, he cannot satisfy the

---

[20] Although Amodeo indicates in his reply affidavit that he "annexed an affidavit [t]hereto from [his] prior attorneys Ancona Associates addressing whether or not they received and consequently provided a copy of the Court's Order[,]" (Amodeo Reopen Reply, ¶ 20), no such affidavit was filed with his reply papers. (*See* DE 107).

condition set forth in Rule 4(a)(6)(A) of the Federal Rules of Appellate Procedure.

Moreover, as Amodeo was still represented by Mr. Levine and Mr. Ancona at the time the final judgment was entered in on June 16, 2015, notice of entry of the final judgment was properly served upon them, instead of Amodeo. *See* Fed. R. Civ. P. 5(b)(1) ("If a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party.") To the extent Amodeo contends that his failure to timely file a notice of appeal was caused by his prior counsels' negligence, this Court is without discretion to provide him relief under Rule 4(a)(6) of the Federal Rules of Appellate Procedure. *See*, *e.g. In re WorldCom, Inc.*, 708 F.3d at 340 (holding that it was not within the district court's discretion to provide relief under Rule 4(a)(6) of the Federal Rules of Appellate Procedure where the party's failure to receive notice of entry "was entirely and indefensibly a problem of its counsel's making, [as] Rule 4(a)(6) was not designed to reward such negligence.") Accordingly, the branch of Amodeo's motion seeking to reopen his time to file an appeal of the final judgment pursuant to Rule 4(a)(6) of the Federal Rules of Appellate Procedure is denied.

      C.     Amodeo's Recent Rule 60 Motion[21]

---

[21] The memorandum of law filed by Mr. Liotti on behalf of Amodeo, containing only two (2) pages of legal argument, is devoid of any reference to Rule 60 of the Federal Rules of Civil Procedure and argues only: (1) that I should reconsider the award of prejudgment interest to plaintiffs "in light of the defendants' submissions and the equities involved in this case," (Memorandum of Law in Support of Rule 60 Motion ["Rule 60 Mem."] at 1), and because "defendants have not profited in any way from their alleged non-payments," (*id.*); (2) that it is "questionable" that Amodeo served as a fiduciary under ERISA as found by Judge Platt, (*id.*); and (3) that the issue of whether Amodeo breached his fiduciary duties should be determined at a trial, (*id.* at 2). The latter assertion is not supported by any legal authority.

32

In his Recent Rule 60 Motion, Amodeo moves, *inter alia*, (1) to correct a purported "clerical mistake or a mistake arising from oversight or omission" in the final judgment pursuant to Rule 60(a) of the Federal Rules of Civil Procedure; (2) to vacate, modify and/or amend the final judgment on the basis of "excusable neglect," (Declaration of Thomas F. Liotti, Esq. in Support of Rule 60 Motion filed April 4, 2016 ["Liotti 2016 Decl."], ¶ 3), "new evidence," fraud and "in the interest of justice," (Affidavit of Matthew Amodeo in Support of Rule 60 Motion filed April 4, 2016 ["Amodeo 2016 Aff."], ¶¶ 1 and 10), pursuant to Rule 60(b)(1), (2), (3) and (6) of the Federal Rules of Civil Procedure; and (3) to stay the enforcement of the final judgment pending a determination of the motion and any appeal of the final judgment pursuant to Rule 62(b)(4) of the Federal Rules of Civil Procedure.

"Under the Federal Rules of Civil Procedure, there are three types of motions by which a judgment may be amended (as opposed to set aside): (1) a motion to 'alter or amend a judgment' under Fed. R. Civ. P. 59(e); (2) a motion to correct '[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission' under Fed. R. Civ. P. 60(a); and (3) a motion for relief from the judgment under Fed. R. Civ. P. 60(b)." *Hodge ex rel. Skiff v. Hodge*, 269 F.3d 155, 158 (2d Cir. 2001); *see also L.I. Head Start Child Dev. Servs., Inc. v. Economic Opportunity Comm'n of Nassau Cty., Inc.*, 956 F. Supp. 2d 402, 408-11 (E.D.N.Y. 2013). Since, *inter alia*, a motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure "must be filed no later than 28 days after the entry of the judgment," Fed. R. Civ. P. 59(e), and Amodeo did not file a motion thereunder on or before July 14, 2015, Amodeo cannot seek relief under Rule 59(e).

1.  Fed. R. Civ. P. 60(a)

Amodeo contends, *inter alia*, that the final judgment against him should be corrected pursuant to Rule 60(a) of the Federal Rules of Civil Procedure because plaintiffs were awarded "an amount greater than that which was rightfully owed via an oversight in interpreting misleading documents and motions that were contained in this action." (Amodeo 2016 Aff., ¶ 34; *see also id.*, ¶ 35).

Rule 60(a) of the Federal Rules of Civil Procedure provides, in relevant part, that a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." "A motion under Rule 60(a) is available only to correct a judgment for the purpose of reflecting accurately a decision that the court actually made." *Hodge*, 269 F.3d at 158 (quotations and citation omitted); *see also Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 150-51 (2d Cir. 1999) ("In deciding whether Rule 60(a) applies, courts distinguish between changes that implement the result intended by the court at the time the order was entered and changes that alter the original meaning to correct a legal or factual error, because Rule 60(a) allows for the former, but not the latter." (quotations and citation omitted)); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a).") "Rule 60(a) is not meant to provide a way for parties to relitigate matters already decided, to change errors in what a court has deliberately done, or to attempt to establish a right to relief which the court has not previously recognized." *L.I. Head Start*, 956 F. Supp. 2d at 409; *accord Employers Mut. Cas. Co. v. Key Pharm., Inc.*, 886 F. Supp. 360, 363 (S.D.N.Y.

1995). "In sum, . . . Rule 60(a) allows a court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement[,] . . . [but] does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *L.I. Head Start*, 956 F. Supp. 2d at 409 (quotations and citations omitted); *see also Employer Mut.*, 886 F. Supp. at 363 ("[A] motion under Rule 60(a) can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced." (quotations and citation omitted)).

Since all of the Court's prior orders challenged by Amodeo, and the final judgment entered thereupon, accurately reflect the Court's intentions in issuing them, the branches of Amodeo's Recent Rule 60 Motion seeking to amend or modify the prior orders and final judgment against him pursuant to Rule 60(a) of the Federal Rules of Civil Procedure are denied.


2.      Fed. R. Civ. P. 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure provides, in relevant part,

> "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; . . . or (6) any other reason that justifies relief."

Fed. R. Civ. P. 60(b).

"[S]ince 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating exceptional circumstances." *Paddington Partners*, 34 F.3d at 1142 (quotations and citation omitted); *accord Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009). "Generally, courts require that the evidence in support of the motion to vacate a final judgment [under Rule 60(b)] be 'highly convincing,' . . . that a party show good cause for the failure to act sooner, . . . and that no undue hardship be imposed on other parties." *Kotlicky v. U.S. Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987); *accord Circuito Cerrado, Inc. v. Velasquez*, 296 F.R.D. 122, 125 (E.D.N.Y. 2013); *Suffolk Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 958 F. Supp. 2d 399, 402 (E.D.N.Y. 2013).

"An argument based on hindsight regarding how the movant would have preferred to have argued its case does not provide grounds for Rule 60(b) relief, . . . nor does the failure to interpose a defense that could have been presented earlier, . . . nor does the failure to marshall all known facts in opposition to a summary judgment motion[.]" *Paddington Partners*, 34 F.3d at 1147 (citations omitted); *accord Circuito Cerrado*, 296 F.R.D. at 125; *see also Travelers Cas. & Sur. Co. v. Crow & Sutton Assocs.*, 228 F.R.D. 125, 128 (N.D.N.Y. 2005), *aff'd*, 172 F. App'x 382 (2d Cir. Mar. 23, 2006) ("[A] party may not use Rule 60(b) to relitigate the merits of his claim."); *Devi v. Silva*, 861 F. Supp. 2d 135, 143 (S.D.N.Y. 2012) ("[A] party is not permitted to raise a new argument in a motion for reconsideration [pursuant to Rule 60(b)] that it failed to raise in the underlying motion."); *Pena v. United States*, 859 F. Supp. 2d 693, 697 (S.D.N.Y. 2012) ("Rule 60 does not provide a movant an additional opportunity to make arguments or attempt to win a point already carefully analyzed and justifiably disposed. A Court should not

reconsider issues already examined simply because [the movant] is dissatisfied with the outcome of his case. To do otherwise would be a waste of judicial resources." (quotations and citation omitted)).

Moreover, pursuant to Rule 60(c) of the Federal Rules of Civil Procedure, "[a] motion udner Rule 60(b) must be made within a reasonable time– and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Relief under Rule 60(b) is discretionary, *see Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *Motorola*, 561 F.3d at 126, and equitable. *Motorola*, 561 F.3d at 127. "In no circumstances . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens*, 676 F.3d at 67; *accord Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986).

a.      Fed. R. Civ. P. 60(b)(2)

In his affidavit in support of his Recent Rule 60 Motion, Amodeo asserts, *inter alia*, that after Ms. Strange "clarified that she did not represent the Local 28 Funds [in her declaration in opposition to his Motion to Reopen] . . . [and] acknowledged an undocumented receipt of a contribution check paid to her clients, collectively known as, the Sheet Metal Workers National Benefit Funds of Local 28[,] . . . [t]he amount of [which] was inadvertently awarded to the plaintiffs because of this non-disclosure[,] . . . [he was] compelled . . . to research old records from [RMTI] that [he] had thought were destroyed but were actually in storage." (Amodeo 2016 Aff., ¶ 3; *see also* Amodeo 2016 Reply, ¶¶ 19-20). According to Amodeo, his search "uncovered a second check paid to the Sheet Metal Workers National Benefit Fund during the liability

period[] . . . [that] was also undisclosed by the Plaintiffs[,]" (Amodeo 2016 Aff., ¶ 3), and his

"[f]urther review of the case files provided documentation that plaintiffs and their counsel were

aware of at least one of th[o]se undisclosed contribution checks on May 26, 2010." (*Id.*, ¶ 4

[referring to his deposition testimony wherein he identifies an exhibit that was shown to him as

"a check written from [RMTI] from JP Morgan, 2014, to the Sheet Metal Workers' of National

Benefits Funds for $15,939.11" that was dated "[e]ither 08-05 or 09-05" of 2008]; *see also id.*,

Exs. C and E).  Amodeo contends that since "[t]he check [sic] in Exhibits C & D paid to

plaintiffs for the contribution period of July 1, 2008 - August 31, 2008, were not presented to the

court in Defendants [sic] Notice of Opposition dated 9/25/2014 against the filing of a Motion for

Summary Judgment on damages[,]" they constitute new evidence for purposes of Rule 60(b)(2).

(*Id.*, ¶ 5).

In addition, Amodeo contends, *inter alia*, that "an ERISA Bond in the amount of $18,000

pledged to the Plaintiffs by [RMTI] for the contribution period relevant in this action, as

protection against unpaid contributions," (Amodeo 2016 Aff., ¶ 40), constitutes "newly

discovered evidence" because (i) he only "recently discovered [the bond] after reviewing the

terms of the Collective Bargaining Agreement and researching ERISA law[]" and (ii) he "tracked

down the bonding company after [the May 28, 2015] Order and obtained a faxed copy of the

bond . . . for [his] records." (*Id.*, ¶ 91; *see also* Amodeo 2016 Reply, ¶¶ 18(b) and (c)).

Moreover, Amodeo asserts that "[u]pon notification of [the May 28, 2015] Order, [he] researched

archived the [sic] public records pertaining to the Plaintiff's [sic] contractual agreements with

[RMTI][,]" at which time he located the bond.  (Amodeo 2016 Aff., ¶ 103).  According to

Amodeo, a copy of the bond was sent to him on June 9, 2015, which was the first time he was aware of it, and he "no longer was represented by counsel at the time and was unsure about [its] relevance . . . ."[22]  (*Id.*, ¶ 103 and Ex. M).

The party seeking relief from judgment pursuant to Rule 60(b)(2) must meet the "onerous standard" of demonstrating that: "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant . . . [was] justifiably ignorant of them despite due diligence, (3) the evidence . . . [is] admissible and of such importance that it probably would have changed the outcome, and (4) the evidence . . . [is] not . . . merely cumulative or impeaching."  *U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (brackets and citation omitted); *see also Ins. Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010) (In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is truly newly discovered or [] could not have been found by due diligence."  (quotations, alterations and citation omitted)); *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 178 (2d Cir. 2004) ("To prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that he was justifiably ignorant of the newly discovered evidence despite due diligence."); *Boule v. Hutton*, 328 F.3d 84, 95 (2d Cir. 2003) ("Rule 60(b)(2) provides relief when the movant presents newly discovered evidence that

---

[22]  As this self-serving assertion is contrary to his earlier assertions that he was represented by his former counsel until July 2015, it is not credited by the Court.  Similarly, Amodeo's self-serving and contradictory assertion in his reply affidavit that he was no longer represented by counsel after entry of the May 28, 2015 Order, (Amodeo 2016 Reply, ¶ 18(a)), is not credited by the Court.

could not have been discovered earlier and that is relevant to the merits of the litigation.")

Amodeo concedes that he did not research "all available documents" until after he "learn[ed] about" the May 28, 2015 Order granting plaintiffs' motion for summary judgment. (Amodeo 2016 Aff., ¶ 105). Moreover, notwithstanding his purported belief that the documents were "destroyed," Amodeo could have just as easily checked "in storage" for all relevant documents when preparing his opposition to the motion for summary judgment as he did after receiving Ms. Strang's declaration in opposition to his Motion to Reopen. (*See id.*, ¶ 3). His failure to do so demonstrates a lack of due diligence and precludes a finding of justifiable ignorance.

In addition, the collective bargaining agreement, the review of which purportedly caused Amodeo to discover the ERISA bond, (*see id.*, ¶ 91), was attached to plaintiffs' motion for summary judgment and, thus, the bonding provision contained therein was known, or reasonably could have been known, to Amodeo and/or his prior counsel in preparing his opposition to the motion. Amodeo proffers no excuse, much less a reasonable excuse, for his or his counsel's failure to research "ERISA law" or the "archived public records," and to track down the bonding company to obtain a copy of the bond, (*see id.*, ¶¶ 91, 103), at that time. Amodeo's and/or his counsel's failure to marshal all known facts, or facts that were reasonably available and, with due diligence, should have been known to them, in opposition to plaintiffs' motion for summary judgment does not entitle Amodeo to relief under Rule 60(b).[23] *See, e.g. Paddington Partners*,

---

[23] Indeed, Amodeo clearly had knowledge of at least one of the purportedly undisclosed checks prior to the May 28, 2015 Order, as he refers to his testimony during his deposition "on

34 F.3d at 1147 (citations omitted); *Circuito Cerrado*, 296 F.R.D. at 125.

Since Amodeo offers no reasonable explanation for his failure to discover the two (2) checks and the ERISA bond in time to submit those documents in his opposition to plaintiffs' motion for summary judgment on the issue of damages, or at any other time prior to the entry of final judgment against him in this action, he cannot demonstrate that he was justifiably ignorant of those documents despite due diligence. *See, e.g. State St. Bank*, 374 F.3d at 178. Accordingly, the branches of Amodeo's motion seeking relief pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure are denied.[24]

b.      Rule 60(b)(1)

Amodeo contends that he "did not expect the Plaintiffs to prevail in this matter[;] . . . [he] was inadvertently under the impression that [RMTI] only owed money to the Local 28 International Welfare Fund . . . [;] [he] was under the impression that all delinquent union contributions were settled by [Iorio and RMTI] before his cessation[;] [and] [he] expected the [C]ourt to include th[o]se . . . payments in its decision, thereby not finding [him] liable for any

---

May 26, 2010" identifying an exhibit as "a check written from [RMTI] from JP Morgan, 2014, to the Sheet Metal Workers' of National Benefits Funds for $15,939.11" that was dated "[e]ither 08-05 or 09-05" of 2008. (Amodeo 2016 Aff., ¶ 4 and Exs. C and E).

[24]  The purported "newly discovered" fact that the Sheet Metal Workers' Local 28 Funds received the entire amount of the bond, (*see* Amodeo 2016 Reply, ¶ 14), is not relevant to the merits of this litigation and would not have changed the outcome of this case because, *inter alia*, the Sheet Metal Workers' Local 28 Funds is a different entity than plaintiffs; is not a plaintiff in this action; and was listed, together with plaintiffs, as a payee on the bond. (*See* Strang 2016 Decl., ¶ 13; Strang Reopen Decl., ¶ 20).

damages." (Amodeo 2016 Aff., ¶ 104). According to Amodeo, "[u]pon learning about the

[C]ourt's [May 28, 2015] Order, [he] researched all available documents that were previously

excusably neglected until the surprise of the Order awarding the Plaintiffs representing the

National Benefit Fund rather than the Local Benefit Fund[,]" as he previously believed that those

Funds "were indistinguishable from a contribution liability basis." (*Id.*, ¶ 105) (emphasis

omitted).

Initially, where, as here, "a claim sounds very much like a claim regarding newly

discovered evidence, the claim is controlled by 60(b)(2) and should not be labeled as if brought

under a different provision of Rule 60(b)." *State St. Bank*, 374 F.3d at 178 (quotations and

citation omitted). Accordingly, to the extent Amodeo seeks relief under Rule 60(b)(1) based

upon purported mistakes of fact that he supports with the two (2) purportedly undisclosed checks

and the ERISA bond, all of which are claimed to be "newly discovered evidence" that were not

presented on plaintiffs' original motion for summary judgment on the issue of damages, those

claims are controlled by Rule 60(b)(2) of the Federal Rules of Civil Procedure and, for the

reasons set forth above, are denied. In any event, "where a party fails to act with diligence, he

will be unable to demonstrate that his conduct constituted 'excusable neglect.'" *State St. Bank*,

374 F.3d at 177; *see also Raj v. R. Kenneth Barnard, Esq., Chapter 11 Operating Tr. (In re Joe's

Friendly Serv. & Son, Inc.)*, 538 B.R. 618, 624 (E.D.N.Y. 2015) ("[T]he moving party must

demonstrate that his alleged mistake was justified, and not merely the result of carelessness.");

*L.I. Head Start*, 956 F. Supp. 2d at 410 (E.D.N.Y. 2013) ("Relief under Rule 60(b)(1) turns on

equitable factors, notably whether any neglect was excusable.") For the reasons set forth above,

Amodeo's or his prior counsel's failure to submit all relevant documents in opposition to

plaintiffs' motion for summary judgment on the issue of damages was not justified or excusable.

Moreover, although "Rule 60(b)(1) is available for a district court to correct legal errors

by the court[,]" *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009); *see also Howard*

*v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d 196, 210 (S.D.N.Y. 2011) ("Rule 60(b)(1)

motions premised upon 'mistake' are intended to provide relief to a party when the judge has

made a substantive mistake of law or fact in the final judgment or order" and, thus, the movant

must ordinarily "show that the district court committed a specific error" (quotations and citations

omitted)), "Rule 60(b)(1) motions to reopen based on district court mistakes are generally

deemed untimely if made after the deadline for filing a notice of appeal[,]" *Niederland v. Chase*,

425 F. App'x 10, 12 (2d Cir. May 25, 2011) (summary order) (citing *Gey Assocs. Gen. P'ship v.*

*310 Assocs. (In re 310 Assocs.)*, 346 F.3d 31, 35 (2d Cir. 2003)); *see also Otte v. Manufacturers*

*Hanover Commercial Corp.*, 596 F.2d 1092, 1100 (2d Cir. 1979) (holding that "the 'reasonable

time' requirement of [Fed. R. Civ. P.] 60(b) [is] read as requiring a motion for relief from

judicial mistake to be made within the time allowed for appeal[]"); *Int'l Controls Corp. v. Vesco*,

556 F.2d 665, 670 (2d Cir. 1977) ("[A] motion for relief from . . . judicial mistakes under Rule

60(b)(1) may not be made after the time for appeal has elapsed[]"), in order "to prevent the rule

from becoming a vehicle to assert an otherwise time-barred appeal." *Niederland*, 425 F. App'x

at 12-13. Since the deadline for Amodeo to file a notice of appeal of the final judgment against

him in this action expired well before he ever sought any relief pursuant to Rule 60(b)(1) of the

Federal Rules of Civil Procedure, the branches of Amodeo's Recent Rule 60 Motion seeking

relief under Rule 60(b)(1), and the branches of his Motion to Reopen seeking to vacate the prior orders and final judgment entered against him in this action on the basis of judicial mistake, (*see supra*, n. 16), are denied as untimely under Rule 60(c)(1) of the Federal Rules of Civil Procedure.

In any event, Amodeo has not identified any mistakes of law or fact made by the Court based upon the arguments and evidence before it when it determined plaintiffs' motions for summary judgment and a "Rule 60(b)(1) is not to be invoked to provide a movant an additional opportunity to make arguments or attempt to win a point already carefully analyzed and justifiably disposed." *Howard*, 866 F. Supp 2d at 210 (quotations and citation omitted). Since Amodeo's contentions are, in essence, different arguments than presented in his opposition to plaintiffs' motions for summary judgment based upon hindsight following this Court's May 28, 2015 Order, he is not entitled to relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure. *See, e.g. Paddington Partners*, 34 F.3d at 1147 (citations omitted); *accord Circuito Cerrado*, 296 F.R.D. at 125. Accordingly, the branches of Amodeo's Recent Rule 60 Motion seeking relief pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure, and the branches of his Motion to Reopen seeking to vacate the prior orders and final judgment entered against him in this action on the basis of judicial mistake, are denied.

c.       Fed. R. Civ. P. 60(b)(3)

Amodeo contends, *inter alia*, that plaintiffs' failure to include (a) their receipt of the contribution payments evidenced by the two (2) checks submitted by him as "new evidence" in their "sworn accounting statement" in support of their motion for partial summary judgment on

the issue of damages, *i.e.*, the Declaration of Walter Shaw in Support of Plaintiffs' Damages (the

"Shaw Declaration"), (*see* Amodeo 2016 Aff., Ex. F), and (b) "their knowledge of the existence

of the . . . [ERISA] bond," (*id.*, ¶ 92; *see also* Amodeo 2016 Reply, ¶ 17), constitutes "fraud . . .,

misrepresentation, or misconduct by an opposing party" pursuant to Rule 60(b)(3) of the Federal

Rules of Civil Procedure. (*Id.*, ¶¶ 8-10).

"[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of

material misrepresentations and cannot serve as an attempt to relitigate the merits." *Fleming v.*

*New York Univ.*, 865 F.2d 478, 484-85 (2d Cir. 1989); *see also Travelers*, 228 F.R.D. at 128

("[A] party may not use Rule 60(b) to relitigate the merits of his claim."). "To prevail on a Rule

60(b)(3) motion, a movant must show that the conduct complained of prevented [him] from fully

and fairly presenting his case[,]" *State St. Bank*, 374 F.3d at 176; *accord L.I. Head Start*, 956 F.

Supp. 2d at 410, "and that the fraud is attributable to the party or, at least, to counsel." *L.I. Head*

*Start*, 956 F. Supp. 2d at 410 (quotations and citation omitted); *see also Thomas v. City of New*

*York*, 293 F.R.D. 498, 503 (S.D.N.Y. 2013) ("To prevail on a motion . . . pursuant to Fed. R. Civ.

P. 60(b)(3), the movant must show that (1) the adverse party engaged in fraud, misrepresentation

or misconduct by clear and convincing evidence and that (2) such misconduct substantially

interfered with the movant's ability to fully and fairly present its case.") "Where a movant

admits that a [document] that the other party supposedly concealed was already present in the

movant's files, it cannot claim that it was prevented from fully presenting its case." *State St.*

*Bank*, 374 F.3d at 176 (quotations and citation omitted); *accord Entral Grp. Int'l, LLC v. 7 Day*

*Café & Bar*, 298 F. App'x 43, 44 (2d Cir. Oct. 28, 2008) (summary order); *Breslow v.*

*Schlesinger*, 284 F.R.D. 78, 82 (E.D.N.Y. 2012).  Since Amodeo concedes that the two (2)

purportedly undisclosed checks were contained within the archived records to which he had

access, he "cannot prevail as a matter of law on a Rule 60(b)(3) motion predicated on fraud . . . ."

*State St. Bank*, 374 F.3d R 176.

Similarly, the existence of the bond was readily ascertainable from exhibits submitted by

plaintiffs in support of their motion for summary judgment, and Amodeo could have just as

easily obtained a copy of the bond to submit in his opposition to the motion for summary

judgment as he did following the entry of the May 28, 2015 Order.  Indeed, Amodeo was able (a)

to discover the existence of the bond by reviewing the terms of the collective bargaining

agreement and researching ERISA law; (b) to track down the bonding company; and (c) to obtain

a copy of the bond within twelve (12) days of the entry of the May 28, 2015, *i.e.*, by June 9,

2015.  (Amodeo 2016 Aff., ¶¶ 91, 103 and Ex. M; Amodeo 2016 Reply, ¶ 18(c)).  Thus,

plaintiffs' purported failure to disclose the existence of the bond also did not prevent Amodeo or

his prior counsel from fully and fairly presenting his defense to plaintiffs' motion for summary

judgment.  Accordingly, the branches of Amodeo's motion seeking relief pursuant to Rule

60(b)(3) of the Federal Rules of Civil Procedure are denied.


d.      Fed. R. Civ. P. 60(b)(6)

Amodeo contends, in essence, (a) that since the total amount of unpaid contributions

awarded to plaintiffs was inflated by the amount of the two (2) checks submitted by him as "new

evidence," totaling twenty-seven thousand five hundred sixty-four dollars and fifty cents

($27,564.50), the awards of accrued interest and liquidated damages were likewise erroneously inflated, (*see* Amodeo 2016 Aff., ¶¶ 12-14, 58-59); (b) that the award of both liquidated damages in the amount of approximately twenty percent (20%) and accrued interest on the unpaid contributions was erroneous because the collective bargaining agreements specifically provide: "In the event that suit is filed against a delinquent Employer, *liquidated damages* shall be the greater of 20% of the delinquent Contributions or interest on the delinquent Contributions at the above stated rate of interest[,]" (*id.*, ¶ 15; *see also id.*, ¶¶ 17, 102) (emphasis added); (c) that plaintiffs were "unjustly enriched" (i) by the "ERISA fidelity bond" purchased by RMTI in the amount of eighteen thousand dollars ($18,000.00), (*id.*, ¶¶ 21-24, 102), and (ii) "in the amount of $31,565.41 for contributions due for the August 1 to August 31, 2008 liability period[] [because] . . . [p]laintiffs withheld the contractual contribution remittance grace period of 5-days [sic] from the [C]ourt[,] [so] [t]he actual due date for the August, 2008 contributions was September 25th not September 20th as awarded in this action[,]" (*id.*, ¶ 25; *see also id.*, ¶¶ 70-75, 89-90, 102; Reply Affidavit of Matthew Amodeo ["Amodeo 2016 Reply"], ¶ 7); and (d) that since "[n]o contributions remain unpaid during the corrected period of liability . . . [t]he awarded legal fees . . . and . . . expenses should be deducted from the judgment amount[,]" (*id.*, ¶¶ 27-28), or reduced to eight thousand two hundred ninety-five dollars and seventy-six cents ($8,295.76). (*Id.*, ¶ 63; *see also id.*, ¶¶ 87-88, 96, 102). According to Amodeo, the final judgment against him should be corrected pursuant to Rule 60(b)(6) because, *inter alia*, I "excusably neglected to perform a thorough review of the Trust Document governing the fiduciary and contribution terms between the Plaintiffs and [RMTI]." (*Id.*, ¶ 36; *see also id.*, ¶¶ 45, 48-50).

Rule 60(b)(6) of the Federal Rules of Civil Procedure "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice and it constitutes a grand reservoir of equitable power to do justice in a particular case." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (quotations and citation omitted); *accord Stevens*, 676 F.3d at 67. "Rule 60(b)(6) relief is only available if Rules 60(b)(1) through (5) do not apply, and if extraordinary circumstances are present or the failure to grant relief would work an extreme hardship on the movant." *ISC Holding*, 688 F.3d at 109; *accord Nemaizer*, 793 F.2d at 63; *see also Int'l Bhd. of Teamsters*, 247 F.3d at 391-92 ("[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6).") Since Amodeo asserts that his claims regarding the two (2) alleged contribution payments and the ERISA bond constitute newly discovered evidence under Rule 60(b)(2) and/or fraud under Rule 60(b)(3), he may not also seek relief with respect to those claims under Rule 60(b)(6). *See, e.g. Int'l Bhd. of Teamsters*, 247 F.3d at 392 (finding that the district court correctly rejected the defendant's claim under Rule 60(b)(6) because it was properly considered under Rule 60(b)(2) as newly discovered evidence).

Similarly, Amodeo's claims alleging mistakes of law and fact in the Court's prior orders and the final judgment against him are properly considered under Rule 60(b)(1) and, thus, he may not also seek relief with respect to those claims under Rule 60(b)(6)." *See, e.g. Wright v. Poole*, 81 F. Supp. 3d 280, 290-91 (S.D.N.Y. 2014) ("In the Second Circuit, arguments that the district court erred– either on matters of law or fact– are encompassed by, and must be brought under, Rule 60(b)(1). . . . Because the ground under which Petitioner seeks relief is encompassed by the

48

more specific Rule 60(b)(1), Petitioner is not permitted to seek relief under Rule 60(b)(6) and

avoid the time limit attached to Rule 60(b)(1) motions." (citations omitted)); *Matura v. United*

*States*, 189 F.R.D. 86, 90 (S.D.N.Y. 1999) ("[B]ecause Rule 60(b)(6) applies only when the other

five subsections are not available, Petitioner may not argue mistake as grounds for relief under

Rule 60(b)(6), as mistake should be properly argued, if at all, under Rule 60(b)(1).")

In any event, contrary to Amodeo's contention, plaintiffs were properly awarded both

liquidated damages and accrued interest on the unpaid contributions. *See* 29 U.S.C. §

1132(g)(2). Indeed, the May 28, 2015 Order specifically cited to the very language in the

collective bargaining agreements upon which Amodeo relies.[25] (*See* DE 84 at 10, n. 2). The full

provision in the collective bargaining agreement provides, in relevant part:

> "Employers who fail to meet their Contribution obligations on a timely basis
> cause [plaintiffs] to incur administrative costs. . . . In the event that an Employer
> is referred to counsel to collect delinquent Contributions, [plaintiffs] incur[]
> additional administrative costs. Because the exact amount of the administrative
> costs is difficult, if not impossible, to ascertain with respect to each delinquent
> Employer, [plaintiffs] shall assess liquidated damages against delinquent
> Employers as follows. If an Employer fails to pay the required Contributions and
> submit accurate supporting remittance reports within five days of the due date,
> that Employer will be liable for liquidated damages equal to the greater of 10% of
> the delinquent Contributions or $50.00. Those liquidated damages are estimated,
> to the best of [plaintiffs'] ability, to approximate the cost of the additional
> administrative expenses and losses caused by an Employer's failure to make
> timely remittance of Contributions. *Delinquent Contributions shall bear interest
> from the original due date until they are paid at the rate of 0.0233% per day,
> compounded daily*. In the event that suit is filed against a delinquent Employer,
> *liquidated damages* shall be the greater of 20% of the delinquent Contributions or
> interest on the delinquent Contributions at the above stated rate of interest. Those
> liquidated damages are estimated, to the best of [plaintiffs'] ability, to

---

[25] Thus, contrary to Amodeo's contention, the "contractual calculation for damages" was
not fraudulently withheld by Mr. Shaw or plaintiffs. (*See* Amodeo 2016 Aff., ¶ 16).

approximate the cost of the additional administrative expenses and losses incurred when [they] take[] legal action to collect delinquent Contributions, and are consistent with the provisions of ERISA."

(*See* Amodeo 2016 Aff., Ex. H) (emphasis added).  Pursuant to the terms of that provision, plaintiffs were entitled to recover both "interest from the original due date until [the delinquent contributions] are paid at the rate of 0.0233% per day, compounded daily" and, since this lawsuit was commenced against Amodeo, liquidated damages in an amount of "the greater of 20% of the delinquent Contributions or interest on the delinquent Contributions at the . . . rate of interest [stated therein]."  (*Id.*)

In addition, contrary to Amodeo's contention, I did not err in awarding judgment against Amodeo for unpaid contributions for the period August 1, 2008 through August 31, 2008 and attorney's fees.  Accordingly, the branches of Amodeo's motion seeking relief from the final judgment entered against him in this action pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure are denied.[26]

D.     Plaintiffs' Sanctions Motion

Plaintiffs seek to recover attorney's fees and costs against Mr. Liotti, personally, pursuant to 28 U.S.C. § 1927 for his conduct in engaging in "'say anything, do anything,' litigation tactics

---

[26]  Since all of the branches of Amodeo's Recent Rule 60 Motion seeking relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure are denied in their entirety, the branch of his motion seeking to stay the execution of the judgment against him pursuant to Rule 62(b)(4) is denied as moot.

[that] have continued the[ir] seven year odyssey for justice. . . ."[27]  (Memorandum in Support of

Plaintiffs' Motion for Section 1927 Sanctions ["Plf. Sanctions Mem."] at 1).

Section 1927 provides, in relevant part, that "[a]ny attorney . . . who so multiplies the

proceedings in any case unreasonably and vexatiously may be required by the court to satisfy

personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such

conduct."  Section 1927 "is designed to deter unnecessary delays in litigation by imposing upon

attorneys an obligation to avoid dilatory tactics."  *People of State of N.Y. by Vacco v. Operation

Rescue Nat'l*, 80 F.3d 64, 72 (2d Cir. 1996); *see also MacDraw, Inc. v. CIT Grp. Equip. Fin.,

Inc.*, 73 F.3d 1253, 1261 (2d Cir. 1996) ("By its terms, § 1927 looks to unreasonable and

vexatious multiplication of proceedings; it imposes an obligation upon attorneys throughout the

entire litigation to avoid dilatory tactics.")

"[A]n award under § 1927 is proper only when there is a finding of conduct constituting

or akin to bad faith."  *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 591 (2d Cir.

2016) (quotations and citation omitted); *accord 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 264

(2d Cir. 2015).  "The attorney's actions must be so completely without merit as to require the

conclusion that they must have been undertaken for some improper purpose such as delay."

*Zurich Am.*, 811 F.3d at 591 (quotations and citation omitted); *accord Casa Duse*, 791 F.3d at

264.  Thus, in order to impose sanctions under Section 1927, "the trial court must find clear

---

[27]  Plaintiffs' contention fails to recognize that Mr. Liotti was only retained by plaintiff approximately eight (8) months ago.  Thus, his conduct did not contribute to the bulk of plaintiffs' "seven year odyssey for justice."

evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes[,]" such as harassment or delay. *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000); *accord Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000); *see also Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) ("It is well established that the imposition of sanctions under § 1927 requires a clear showing of bad faith on the part of an attorney. . . ." (quotations and citation omitted)). "[A]cts that, under the 'bad faith' test, would justify sanctions under § 1927[] . . . include: resubmitting a motion that had previously been denied; bringing a motion based on 'facts' the opposite of which were previously found by the court; making several insupportable bias recusal motions and repeated motions to reargue; continually engaging in obfuscation of the issues, hyperbolism and groundless presumptions in addition to insinuating that the court was biased; and waiting until the eve of trial before making a jury demand." *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir. 1995) (quotations and citation omitted); *see also Walker v. Smith*, 277 F. Supp. 2d 297, 303 (S.D.N.Y. 2003) (finding the following conduct to be "indicia of bad faith[:] extraordinary costs, repeated frivolous filings, obstructive delay tactics, mendacious allegations, and no real prosecution.") An order awarding sanctions pursuant to Section 1927 must contain "a high degree of specificity in the factual findings of the . . . court[]." *Eisemann*, 204 F.3d at 396 (emphasis and citation omitted).

Although (1) many of the assertions made by Amodeo and Mr. Liotti in the affidavits and declarations they submitted in support of, or in opposition to, the various post-judgment motions filed in this case, which presumably were prepared by Mr. Liotti, are unsupported and/or contradictory, (*see, e.g. supra*, footnotes 3, 4, 6, 8, 10, 18, 19 and 22; *compare* Amodeo Reopen

52

Aff., ¶ 8 *with* Amodeo Quash Aff., ¶ 19); (2) some of the legal arguments advanced by them are unsupported by any law and/or contrary to established federal law, *e.g.*, contending that Amodeo was deprived of a constitutional right to a jury trial in an ERISA case seeking to recover unpaid contributions; and (3) all of their contentions in the motions filed by them, with the exception of their request for "privacy protection" pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure, were ultimately rejected herein, with the exception set forth below, Mr. Liotti's actions during the post-judgment proceedings were not "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Zurich Am.*, 811 F.3d at 591 (quotations and citation omitted). Accordingly, plaintiffs' Sanctions Motion is denied.

However, although Amodeo's and Mr. Liotti's unsupported and unwarranted attacks on Judge Platt's fitness to carry out his judicial responsibilities in their submissions filed in support of Amodeo's Motion to Reopen cannot be said to have "so multiplie[d] the proceedings in [this] case unreasonably and vexatiously," 28 U.S.C. § 1927, they nonetheless constitute sanctionable conduct under this Court's inherent power to sanction misconduct. *See, e.g. Koehl v. Bernstein*, 740 F.3d 860, 863 (2d Cir. 2014). "A district court's inherent power to sanction derives from the fact that courts are 'vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Unlike an award under Section, which may be imposed only against an attorney or other person authorized to practice before the

courts, sanctions imposed pursuant to this Court's inherent power "may be made against an attorney, a party, or both." *Id.* Accordingly, **Matthew Amodeo and Thomas F. Liotti, Esq. are hereby cautioned that any further unsubstantiated attacks on the character and/or fitness of Judge Platt, or any other district judge or magistrate judge of this court, will result in the imposition of sanctions against them personally.**

III. CONCLUSION

For the reasons set forth herein, (a) the branch of Amodeo's Cross Motion to Quash "requesting privacy protection" pursuant to Rule 5.2(a) of the Federal Rules of Civil Procedure is granted to the extent that all of his "electronic or paper filing[s]" with this Court may include only the last four (4) digits of his social security number, the year of his birth and the last four (4) digits of any financial account number, and Amodeo's Cross Motion to Quash is otherwise denied; (b) plaintiffs' Contempt Motion is granted to the extent that (i) Amodeo shall provide plaintiffs with his full social security number, date of birth and financial account numbers, and any bank account statements for the period from January 1, 2015 to date, so that his response is received at the offices of their counsel Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743, **on or before June 24, 2016**, **or Amodeo will be held in contempt of the September Subpoena and this Order pursuant to Rule 45(g) of the Federal Rules of Civil Procedure**, and (ii) Amodeo shall appear for a deposition at the offices of Jeffrey S. Dubin, P.C., 464 New York Avenue, Suite 100, Huntington, New York 11743, **on July 8, 2016**, or another mutually agreeable date before July 8, 2016 **or he will be held in contempt of the November Subpoena and this Order pursuant to Rule 45(g) of the Federal Rules of**

**Civil Procedure**, and plaintiffs' Contempt Motion is otherwise denied; and (c) Amodeo's

Motion to Reopen and Recent Rule 60 motion, and plaintiffs' Sanctions Motion are denied in

their entirety.

SO ORDERED.

                                              _____
                                                        /s/
                                              SANDRA J. FEUERSTEIN
                                              United States District Judge

Dated: May 27, 2016
       Central Islip, New York